UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ABRAMSON,<br><br>  Defendant | CASE NO.: 18 CR 681<br><br>Hon. Virginia M. Kendall |

**DEFENDANT MICHAEL ABRAMSON'S CONSOLIDATED MOTIONS *IN LIMINE*<br>TO PRECLUDE OTHER ACTS EVIDENCE**

Defendant Michael Abramson respectfully moves this Court to issue a pretrial ruling to preclude the following other acts evidence that the government seeks to admit: (1) Mr. Abramson met Jerilyn Totani when she was an exotic dancer at a strip club; (2) Mr. Abramson purportedly had a financial interest in the strip club where Ms. Totani was employed; (3) Mr. Abramson allegedly utilized a "nominee" in the purchase of a condominium; and (4) evidence, including summary charts, showing hundreds of thousands of dollars that Ms. Totani earned and lost while gambling with resources provided, in part, by Mr. Abramson.[1] This evidence is inadmissible under Federal Rules of Evidence 402, 403, 404(b)(1), and 608(b).

**INTRODUCTION**

After reading the statement of facts for the government's consolidated motions *in limine*, the government's trial strategy is now clear. The government seeks to shift the jurors' focus from the sparse evidence supporting its false statement tax charges against Mr. Abramson to irrelevant,

---

[1] The parties filed motions *in limine* on June 1, 2020 but agreed that additional motions could be filed within the Court's 77-day deadline extension. As a result of new information set forth in the government's consolidated motions *in limine*, Mr. Abramson is now filing this additional motion. The defense does not anticipate filing any additional motions *in limine* but will file a response to the government's motions *in limine* on June 29, 2020, as the parties previously agreed.

1

inflammatory, and highly prejudicial "background" information concerning Mr. Abramson's morality, including his alleged involvement with adultery, exotic dancers and strip clubs, gambling activities, improprieties related to a condominium purchase, and untimely filing of corporate tax returns. This improper shift in focus will bias the jurors against Mr. Abramson, preclude their ability to impartially review the evidence, and deprive him of a fair trial.[2]

    The defense respectfully asks this Court to protect Mr. Abramson's right to a fair trial and require the government to do what it has not done on its own—draw a reasonable line between admissible evidence and inadmissible, unduly prejudicial evidence. The defense is not objecting to the government's anticipated highlighting of Mr. Abramson's and Ms. Totani's long-term romantic relationship, the "thousands of dollars' worth of jewelry" he bought her, the condominium in downtown Chicago that he provided for her use, the six cars he provided for her use (over their 25-year relationship), the million-dollar life insurance policy for which he named her as the beneficiary, or the substantial cash gifts he gave her. Gov't Consol. Motions *in Limine* ("Government MIL"), ECF No. 50, at 4, 10. The defense anticipates that the government will spend more time on this side show than presenting evidence of false statements in the tax returns. This side show evidence will negatively color the jurors' impression of Mr. Abramson, but the defense recognizes that the government can at least offer a valid purpose for introducing this evidence. The government has gone way over the line in what it seeks to introduce, however. The highly prejudicial evidence to which the defense objects is either completely irrelevant or so minimally relevant that the government's true intentions for introducing the evidence must be scrutinized. The government should be held to its burden of proof on the charges it brought against

---

[2] The defense addressed the inadmissibility of the adultery and untimely tax return filing evidence in earlier motion *in limine* filings, so we will not address those issues again in this motion. We reference them only for purposes of considering the totality of the inadmissible and unfairly prejudicial evidence that the government seeks to admit.

Mr. Abramson. The side show needs some reasonable limits, consistent with the Federal Rules of Evidence and this Court's authority to ensure that Mr. Abramson receives a fair trial.

## BACKGROUND

### I. Ms. Totani's Employment as an Exotic Dancer and Mr. Abramson's Alleged Financial Interest in a Strip Club

The government's statement of facts is replete with irrelevant and unduly prejudicial facts, including that Mr. Abramson and Ms. Totani met "when Totani was an exotic dancer at VIP's Gentlemen's Club (in which Abramson had a financial interest)." *Id.* The government offers no admissible basis for this evidence. It merely states that this prejudicial evidence provides "background" and "context" to Mr. Abramson's and Ms. Totani's relationship. Email from government counsel to defense counsel at 1 (June 2, 2020), attached as Exhibit A.[3]

The government does not even have its facts straight. As Ms. Totani explained to the government, which is detailed in the government's interview report, she never worked at VIP Gentlemen's Club. She worked at a strip club for approximately four months more than 25 years ago, in approximately 1995, when it was called The Doll House. Furthermore, Mr. Abramson never held a financial interest in the club where Ms. Totani danced. During the course of Mr. Abramson's career, he has acted as an attorney and consultant for strip clubs, but he never held a financial interest in any of these businesses.

---

[3] The government's email response combines its proposed bases for several different types of evidence and indicates that some of the evidence is also relevant to whether Ms. Totani legitimately earned commissions through setting up the Rosemont billboard deal and whether she engaged in other work during her relationship with Mr. Abramson. The defense assumes that these admissibility justifications are not for the strip club evidence since Ms. Totani stopped working at the club in 1995 and did not originate the Rosemont deal until 2001.

3

**II.     Condominium in a "Nominee's" Name**

The government agreed to provide notice by May 1 if it intended to seek to introduce other acts evidence under Rule 404. On April 30, government counsel gave notice that the government did not intend to introduce any Rule 404 evidence. The defense, therefore, was surprised when the government's statement of facts in its consolidated motions *in limine* included an allegation that Mr. Abramson put Ms. Totani's condominium "in a nominee's name in order to conceal his connection to the condominium and Totani." Government MIL, ECF No. 50, at 2. It is clear from the government's witness interview reports and grand jury transcripts that the government incorrectly views the mortgage being in a "nominee's name" as fraudulent conduct on the part of Mr. Abramson.

The facts contradict the government's concealment theory. The condominium at issue was owned and financed by an Illinois land trust under the terms of a written partnership agreement. There was nothing sinister or illegal about this arrangement, nor was there any "nominee." In approximately 1998 or 1999, Mr. Abramson designated Richard Forcone as the initial beneficiary for the trust. Mr. Forcone was formerly a Senior Vice President of a mortgage company, and he mortgaged the property on the strength of his own finances. Mr. Abramson paid Mr. Forcone rent for Ms. Totani's use of the property until Mr. Abramson took the assignment of the beneficial interest in the land trust in 2005. Mr. Abramson took this assignment in 2005 even though his romantic relationship with Ms. Totani continued for years after that and Ms. Totanti continued to live in the condominium until approximately 2014.

**III.     Gambling Activities**

The government vaguely set forth in its statement of facts its intent to introduce summary charts detailing "Totani's other work." Government MIL, ECF No. 50, at 6, 7. Upon further inquiries by defense counsel, the government clarified that this referred to Ms. Totani's gambling

4

activities. Exhibit A at 2. According to Ms. Totani, Mr. Abramson covered her gambling losses. Although the charts have not yet been produced to the defense, based on Ms. Totani's tax returns and related records, they are expected to show that between 2007 and 2010, she routinely earned between approximately $300,000 and $537,000 annually from playing poker and video poker (and lesser amounts between 2011 and 2013). But as typically happens with lengthy gambling, she always lost at least the amount she won.

The government asserts that it seeks to introduce these summary charts simply to prove that Ms. Totani had non-real estate related employment (Ex. A at 1), but the government fails to explain how working as a realtor and poker player are mutually exclusive. *Id.* at 1. As the government well knows, the gambling records potentially create an innuendo that could lead jurors to conclude, inaccurately, that Mr. Abramson somehow was utilizing Ms. Totani to launder money, which is presumably why the government seeks to use summary charts on this totally irrelevant and unduly prejudicial topic.[4]

## ARGUMENT

I. **The Court Should Exclude Evidence of Ms. Totani's Employment as an Exotic Dancer When She Started Dating Mr. Abramson and the False Allegation of Mr. Abramson's Financial Interest in a Strip Club as Irrelevant and Unduly Prejudicial.**

The fact that Ms. Totani worked as an exotic dancer for four months, when she and Mr. Abramson met more than 25 years ago, and the false allegation that Mr. Abramson held a financial interest in the strip club where she danced, are wholly irrelevant to any elements the government must prove for its false statement tax case against Mr. Abramson. The government, in apparent recognition that the evidence is not relevant to any of its elements of proof, attempts to justify the unfairly prejudicial evidence on the grounds that it is "relevant to the background and context of

---

[4] Mr. Abramson incorporates by reference the factual background set forth in his motion to exclude the testimony of Michael Welch. ECF No. 51 at 2-6.

5

Totani's and Abramson's relationship." *Id.* There is no fathomable way that this particular "background" information about their relationship could assist the jurors in assessing whether Ms. Totani originated the Rosemont billboard deal or her entitlement to real estate commissions for that origination. Rule 402 prohibits the introduction of this highly prejudicial evidence about exotic dancing and strip clubs under the guise of "background" information. *See United States v. White*, 2:12-CR-00221, 2013 WL 12092306, at *6 (S.D.W. Va. Oct. 24, 2013) (court properly precluded as irrelevant and overly prejudicial evidence of witness's employment as an exotic dancer as "context for her relationship with" another witness.); *see also United States v. David*, SACR 04-00068 JVS, 2007 WL 9717514, at *1 (C.D. Cal. June 27, 2007) (excluding reference to government witness's prior work as an exotic dancer because "this work experience is not relevant to the false tax preparation charges in this case"); *Nilson v. Softmart, Inc.*, 12-3914, 2015 WL 12791435, at *4 (E.D. Pa. Nov. 3, 2015) (excluding as irrelevant "evidence suggesting an association between [defendant] and strippers/exotic dancers").

    Even if the government could articulate a viable relevance theory for this evidence, courts have routinely found that it must still be excluded under Rule 403 because any minimal probative value is substantially outweighed by a danger of unfair prejudice. *See e.g., Moore v. Plotke*, 12 C 238, 2015 WL 7731823, at *2 (N.D. Ill. Nov. 30, 2015) (noting proper ruling "that counsel was precluded from eliciting testimony concerning [Plaintiff's] employment as a stripper or exotic dancer"); *Hall v. Mayor Aldermen of City of Savannah, Georgia*, 403CV248, 2005 WL 8156263, at *3 (S.D. Ga. Oct. 3, 2005) (excluding evidence of defendant's off-duty work at lounge thought to be a strip club as "too irrelevant and prejudicial under Rule 403."); *United States v. Lignelli*, 2:11-CR-234, 2014 WL 2002294, at *3 (W.D. Pa. May 15, 2014) (excluding references to strip club visits in connection with business dealings as unduly prejudicial).

**II.      The Court Should Exclude Evidence Related to Mr. Abramson's Involvement in Ms. Totani's Gambling, and the Details of Her Win-Loss Record, as Irrelevant and Unduly Prejudicial.**

The government also plans to offer summary charts to set forth in detail Ms. Totani's gambling activities, which were funded in part by Mr. Abramson, under the guise of demonstrating that she did not legitimately earn commissions through the Rosemont billboard deal and that she did not really work for Eastern Advisors during the course of her relationship with Mr. Abramson. Exhibit A at 1. When one looks just slightly below the surface, it becomes clear that the government's purported justification for the introduction of the gambling evidence does not mesh with the facts. First, neither a poker player nor a real estate agent holds a 9-5 job. Thus, the jobs are not mutually exclusive. Indeed, Ms. Totani's commissions for the billboard deal were based on her origination of the deal and were essentially a finder's fee. A finder's fee does not require any routine working hours. Second, Ms. Totani could not have supported herself on her gambling earnings alone, since she consistently reported that she lost more than she earned gambling each year. Third, she earned the annual billboard commissions for the information she provided to Eastern Advisors in the early 2000s, yet the government wants to introduce gambling records from years later. Finally, Ms. Totani reported *both* her real estate commissions *and* her gambling earnings/losses on her tax returns. Accordingly, the gambling evidence does not assist the government in disproving that Ms. Totani legitimately earned real estate commissions or countering the facts that: (1) Ms. Totani held a valid real estate salesperson/broker's license during the relevant time period; and (2) she testified under oath in the grand jury, pursuant to an immunity agreement with the government conditioned on her telling the truth, that she earned the billboard commissions as a finder's fee.

The only purpose of this evidence is to further the government's apparent goal of poisoning the jurors' views of Mr. Abramson and the nature of his relationship with Ms. Totani. It is well-

7

recognized that evidence of gambling is prejudicial, and, in this case, the high dollar values involved and Ms. Totani's win-loss record will exacerbate that prejudicial effect and potentially create the false impression that Mr. Abramson and Ms. Totani were involved in illegal activities, including money laundering. Due to the irrelevant and highly prejudicial nature of Ms. Totani's gambling records and Mr. Abramson's involvement in her gambling, the Court should exclude all evidence on this topic, including the summary charts, pursuant to Rules 402 and 403. *See United States v. Swan*, 250 F.3d 495, 501 (7th Cir. 2001) ("gratuitous" references to defendant's gambling, which was not "inextricably related" to the crimes for which he was charged and which "did little to explain" his intent, was "probably error under Rules 404 and 403 of the Federal Rules of Evidence"); *United States v. Schultz*, 14-CR-467-3, 2016 WL 7409911, at *4 (N.D. Ill. Dec. 22, 2016) (excluding expert testimony about defendant's aggregate gambling activities where proposed testimony was prejudicial and not relevant to the stated purpose of its introduction); *United States v. Santiago*, 477 F. App'x 922, 928 (3d Cir. 2012) (district court did not abuse its discretion by precluding irrelevant testimony on witness's gambling); *United States v. St. Michael's Credit Union*, 880 F.2d 579, 601–03 (1st Cir. 1989) (district court committed reversible error by allowing introduction of irrelevant and prejudicial gambling evidence); *United States v. Cooper*, 286 F. Supp. 2d 1283, 1291 (D. Kan. 2003) (excluding evidence that defendant spent money on gambling and strip clubs because "the particularly limited probative value of this evidence is substantially outweighed by the unfair prejudice related to class and inflammatory moral issues.").

**III. The Court Should Exclude Improper Propensity Evidence Falsely Suggesting that Mr. Abramson Engaged in Fraudulent Conduct Related to Ms. Totani's Condominium.**

For the first time in its consolidated motion *in limine*, the government indicated that it seeks to introduce evidence that Mr. Abramson put the condominium in which Ms. Totani lived in the

8

name of a "nominee" in order to "conceal his connection to the condominium and Ms. Totani." Government MIL, ECF No. 50, at 2. Although it is clear from the government's questioning of witnesses during interviews and in the grand jury that it incorrectly believes Mr. Abramson's conduct related to the condominium was fraudulent, the government has not charged Mr. Abramson related to this conduct, and there is no justification for having a mini trial on this issue. The government does not need to introduce evidence that the property was held in a land trust or identify the beneficiary of the trust to establish that Ms. Totani understood that Mr. Abramson was providing her with use of the condominium—the only minimally relevant topic related to the condominium. Furthermore, the government's theory that Mr. Abramson put the condominium in the name of a "nominee" to conceal his relationship with Ms. Totani is eviscerated by the fact that Mr. Abramson was the beneficiary for the last nine years that she lived there. The sole purpose of the evidence regarding the "nominee" would be to suggest to the jurors that if Mr. Abramson committed fraud related to the condominium, he was more likely to have made false statements in his tax returns. This type of propensity evidence is strictly prohibited by Rule 404(b)(1), and there are no admissibility exceptions under Rule 404(b)(2). Indeed, the government did not provide Rule 404(b) notice to suggest otherwise. Accordingly, this irrelevant evidence must be excluded. *See United States v. Beasley*, 809 F.2d 1273, 1278 (7th Cir. 1987) ("A rule that a judge may admit all evidence that the defendant committed crimes of similar varieties produces the gravest risk of offending the central prohibition of Rule 404(b)"); *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014) (careful attention to, "specifically, how the evidence is relevant without relying on a propensity inference" "will help identify evidence that serves no permissible purpose."); *United States v. Albiola*, 624 F.3d 431, 438 (7th Cir. 2010) (noting the "great potential for prejudice" of 404(b) evidence).

Even if the government had provided timely notice of its intention to introduce Rule 404(b) evidence and there was a viable exception under Rule 404(b)(2), which there is not, the evidence would still be inadmissible under Rule 403. This is a high-risk case with respect to the potential consequences of the admission of unduly prejudicial evidence. The government's evidence of the actual charged conduct, at least from the defense's perspective, is highly technical and underwhelming. Even without the admission of the objectionable evidence, the government's case is already heavily skewed to the side show—Mr. Abramson's wealth, his romantic relationship with a younger woman, and the lavish gifts he provided to her over the course of 25 years. The jurors will view these facts in an unfavorable light. If the government is allowed to introduce minimally relevant but highly prejudicial evidence pertaining to Mr. Abramson's alleged other acts, the jurors will not be able to fairly judge Mr. Abramson's criminal intent and culpability pertaining to the highly technical conduct for which he has been charged, namely false statements on his tax returns. The prejudice is particularly high in this case, where the allegedly false statements are based on novel theories of appropriate tax treatment—issues more commonly addressed in civil tax audits than criminal trials. Adding any of the inflammatory and highly prejudicial categories of other acts evidence the government seeks to admit will tip the scales against a fair trial. *See United States v. Ciesiolka*, 614 F.3d 347, 356-58 (7th Cir. 2010) (remanding for new trial because district court admitted, without adequate explanation, "mountains of Rule 404(b) evidence, much of which was highly prejudicial," in case where the government's evidence regarding the crime charged was "somewhat equivocal.").

IV. **The Other Acts Evidence That the Government Seeks to Introduce Is Inadmissible Under Federal Rule of Evidence 608(b).**

If Mr. Abramson decides to testify at trial, the government should be precluded from asking him about the other acts that are the subject of the defense's motions *in limine*. The court has

broad discretion to determine whether the government can question Mr. Abramson about specific instances of conduct, but these acts are admissible under Rule 608(b) only if they are probative of his character for truthfulness or untruthfulness. *See* Rule 608(b). Involvement with strip clubs does not go to truth-telling under Federal Rule of Evidence 608(b). *See United States v. David*, SACR 04-00068 JVS, 2007 WL 9717514, at *1 (C.D. Cal. June 27, 2007) ("There is nothing about the job of an exotic dancer that connotes veracity or the lack thereof."). Accordingly, the government should not be allowed to question Mr. Abramson on this topic.

The government also should be precluded from questioning Mr. Abramson about gambling activities. Any alleged improprieties on the part of Mr. Abramson related to gambling would be nothing more than pure speculation on the part of the government. It is well-recognized that the government must have a "good faith basis in fact" to question a witness about alleged conduct pursuant to Rule 608. *United States v. Abair*, 746 F.3d 260, 264 (7th Cir. 2014) (granting new trial to defendant against whom evidence was improperly admitted under Rule 608(b)). It is not enough to have "'a prosecutorial hunch' that the defendant engaged in dishonesty;" instead, "Rule 608(b) requires that the cross-examiner have reason to believe the witness actually engaged in conduct that is relevant to [his] character for truthfulness." *Id.*

Similarly, any questioning related to the government's condominium "nominee" allegations cannot be justified under Rule 608. First, there is no credible evidence that Mr. Abramson took any actions related to the condominium that would bear on his character for truthfulness or untruthfulness. Furthermore, the conduct in question occurred more than 20 years ago. Although Rule 608 does not include a time limit, Rule 608 topics are subject to a Rule 403 analysis. *Abair*, 746 F.3d at 263. Conduct that occurred over 20 years ago has minimal probative value in assessing truthfulness, even if there was credible evidence that there were improprieties

11

related to the condominium. See *United States v. Mandell*, 12 CR 842, 2014 WL 464226, at *3 (N.D. Ill. Feb. 3, 2014) (excluding decades-old evidence that defendant took bribes); *Jentz v. ConAgra Foods, Inc.*, 10-CV-0474-MJR-PMF, 2012 WL 13028269, at *4 (S.D. Ill. May 2, 2012) (excluding purported Rule 608 evidence that occurred more than 25 years ago). Accordingly, the government should be precluded from opening the door to this highly disputed, irrelevant, and prejudicial topic through the questioning of Mr. Abramson. See *Shaffer & Sons Construction, Inc. v. Alter Trading Corp.,* No. 08-3007, 2010 WL 5138479, at *4 (C.D. Ill. Dec. 10, 2010) (finding that a crime that took place almost 16 years before is "not particularly probative of truthfulness or untruthfulness" for purposes of Rule 608(b)); *United States v. DeGeratto*, 876 F.2d 576, 584-85 (7th Cir. 1989) (court committed reversible error in failing to exclude under Rule 403 highly prejudicial evidence containing only slight probative value to impeach defendant).

## CONCLUSION

For the reasons stated above, Mr. Abramson respectfully requests that the Court enter an order barring evidence, arguments, and the questioning of Mr. Abramson related to the following: (1) Mr. Abramson met Ms. Totani when she was an exotic dancer at a strip club; (2) Mr. Abramson purportedly had a financial interest in the strip club where Ms. Totani was employed; (3) Mr. Abramson allegedly utilized a "nominee" in the purchase of a condominium; and (4) evidence, including summary charts, showing hundreds of thousands of dollars that Ms. Totani earned and lost while gambling with resources provided, in part, by Mr. Abramson.

Dated: June 12, 2020 Respectfully submitted,

/s/ *Valarie Hays*
Valarie Hays (ARDC No. 6272380)
Matthew C. Crowl (ARDC No. 6201018)
Lauren Jaffe (ARDC No. 6316795)
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: 312.471.8700

*Counsel for Michael Abramson*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2020, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

*/s/ Valarie Hays*
Valarie Hays