UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL ABRAMSON,<br><br>　　　　Defendant | CASE NO.: 18 CR 681<br><br>Hon. Virginia M. Kendall |

**DEFENDANT MICHAEL ABRAMSON'S RESPONSE TO
THE GOVERNMENT'S CONSOLIDATED MOTIONS *IN LIMINE***

Defendant Michael Abramson, by and through his counsel, submits this response to the government's Consolidated Motions *In Limine* (ECF No. 50).

## INTRODUCTION

The government's consolidated motions *in limine* include the following: (1) a request to allow the government to recall its case agent during the government's case-in-chief; (2) notice that the government will seek to treat Jerilyn Totani as a witness identified with an adverse party, and therefore, to ask her leading questions during portions of the government's direct examination; and (3) a request that missing witness arguments be raised with the Court in advance of making any such argument. Mr. Abramson does not object to the government's first request (regarding the sequence of the case agent's testimony[1]) or its third request (regarding pre-disclosure of any planned missing witness arguments). With respect to the government's notice that it will seek to ask Ms. Totani leading questions during portions of the government's direct examination, Mr.

---

[1] Although Mr. Abramson does not object to recalling Agent Gibson as a matter of sequence, the inadmissibility of his anticipated testimony on recall is addressed in his Consolidated Motions *in Limine* to Preclude Other Acts Evidence. ECF No. 55. Accordingly, Mr. Abramson will not repeat those arguments here.

1

Abramson objects and requests a pretrial ruling on the government's proposed plan. Evaluating the appropriateness of the proposed plan does not depend on any information that is unknown at this time.

The government's request to treat Ms. Totani as a witness identified with an adverse party is an improper attempt to gain an unwarranted strategic advantage at trial. Although Mr. Abramson and Ms. Totani have close ties, as the government points out, those ties have not affected Ms. Totani's level of cooperation with the government or the government's ability to fully develop her testimony. Ms. Totani has cooperated with the government through all phases of its investigation. She provided documents numerous times and sat for multiple interviews with prosecutors and agents. The government prepared a lengthy written statement for her to read in the grand jury, which she dutifully did. She provided the government with information that the government considers <u>favorable</u> for its case against Mr. Abramson, which is why the government plans to call her as a witness at trial. In recent weeks, she continued to cooperate with the government through her counsel by responding to even more document requests. The government immunized Ms. Totani, conditioned upon her testifying truthfully. The government has not suggested that she will testify inconsistently with her pre-prepared grand jury statement or violate her immunity agreement. In short, the government has failed to make any showing that would warrant the Court departing from the long-standing evidentiary rule disfavoring leading questions on direct examination.

## **BACKGROUND**

Ms. Totani has been cooperative with the government's investigation into Mr. Abramson since agents arrived at her residence in 2016 with a document subpoena. Ms. Totani compiled and produced documents in response to the subpoena and, with the assistance of counsel, continued to search for and provide documents over the following years.

In addition to providing documents, Ms. Totani sat down with prosecutors and agents and willingly submitted to extensive and intrusive questioning into all aspects of her life. The government interviewed Ms. Totani for approximately seven hours over the course of two sessions in January 2018. During these interviews, in which Ms. Totani participated pursuant to an immunity agreement, Ms. Totani answered deeply personal questions about many facets of her private life, including her sometimes turbulent romantic history, her mental health struggles, her work as an exotic dancer, her gambling addiction, the death of her father, surgical procedures she underwent, and her romantic relationship with Mr. Abramson. At the conclusion of the second interview, Ms. Totani even gave the government her camera and phone, so they could retrieve any information they wished.

Ms. Totani then testified before the grand jury in June 2018. In the grand jury, she read a statement that the government prepared for her. This statement again laid bare aspects of Ms. Totani's private life and her relationship with Mr. Abramson. She provided the government with what it perceives to be favorable testimony, including painstaking details regarding gifts that Mr. Abramson gave her over the course of their 25-year relationship, and statements suggesting that she never understood certain payments from Mr. Abramson to be loans. But she also testified that she legitimately earned the commission payments at issue in this case from Eastern Advisors.[2] As far as the defense knows, the government never indicated that it believed her testimony violated her immunity agreement, which was conditioned on her testifying truthfully, nor did the government obtain any <u>new</u> evidence after Ms. Totani testified in the grand jury that contradicted her statement. Nonetheless, the government now takes the position that Ms. Totani's grand jury

---

[2] For additional background, Mr. Abramson incorporates by reference the factual background set forth in his motions to exclude the testimony of government expert Michael Welch, ECF No. 51 at 2-6, and his consolidated motions *in limine* to preclude other acts evidence. ECF No. 55 at 2-5.

3

testimony regarding the commission payments "is inconsistent with the government's evidence." ECF No. 50 at 12. Regardless of the government's current belief regarding the accuracy of Ms. Totani's grand jury testimony, the government already knows exactly what Ms. Totani's trial testimony will be, assuming she testifies consistently with her grand jury statement, since it interviewed her at length to develop her grand jury testimony and then prepared her grand jury statement.

## LEGAL STANDARD

A central tenet of the Federal Rules of Evidence is that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." Fed. R. Evid. 611(c). This limitation is necessary because "the suggestive powers of the leading question are…undesirable." Fed. R. Evid. 611 Advisory Committee's Note; *see also Mendiola v. Schomig*, 224 F.3d 589, 593 (7th Cir. 2000) (noting, in a different context, that "[s]ome witnesses fall prey to influences—perhaps the persuasive influence of a skilled advocate asking leading questions[.]"). Although Rule 611(c)(2) allows, under certain circumstances, leading questions during the direct examination of a witness identified with an adverse party, courts have limited their use to instances in which leading questions are actually necessary to develop the witness's testimony. *See, e.g., Dahl v. Hofherr*, 3:14-1734-MGG, 2017 WL 6628334, at *7 (N.D. Ind. Mar. 28, 2017) ("Under Fed. R. Evid. 611(c), leading questions are allowed on cross-examination[ ] and when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party. Leading questions should not be used on direct examination except as necessary to develop a witness's testimony.") (internal quotations omitted); *United States v. McDonnell*, 3:14-CR-12, 2014 WL 3545206, at *1 (E.D. Va. July 16, 2014) (denying government's motion to permit leading questions during the direct examination of eight family members identified with defendants "[b]ecause the record does not demonstrate that these eight witnesses have shown hostility or an uncooperative spirit," but

4

pledging to reconsider the issue at trial "if these witnesses show themselves to be hostile or uncooperative"). Furthermore, the allowance of leading questions during direct examinations should be applied with particular caution in criminal cases. Fed. R. Evid. 611 Advisory Committee's Note (cautioning that "it may be difficult in criminal cases to determine when a witness is 'identified with an adverse party,' and thus the rule should be applied with caution").

Rule 611(c)(2) is permissive, meaning that the Court *may*, but need not, allow leading questions. See *Ellis v. City of Chicago*, 667 F.2d 606, 613 (7th Cir. 1981) (the use of leading questions "must be left to the sound discretion of the trial judge who sees the witness and can, therefore, determine in the interest of truth and justice whether the circumstances justify leading questions to be propounded to a witness by the party producing them.") (internal citations omitted); Fed. R. Evid. 611 Advisory Committee's Note ("The matter clearly falls within the area of control by the judge over the mode and order of interrogation and presentation and accordingly is phrased in words of suggestion rather than command.").

## ARGUMENT

The government has not provided a valid basis for seeking to utilize the disfavored practice of asking leading questions during the direct examination of its own witness. Specifically, the government explained in detail how Ms. Totani was identified with Mr. Abramson (ECF No. 50 at 9-12), but it failed to offer any reason why leading questions will be necessary to develop Ms. Totani's testimony at trial. See Fed. R. Evid. 611(c); *Dahl*, 2017 WL 6628334, at *7 (highlighting requirement that leading questions should not be used on direct examination except as necessary to develop the witness's testimony); *McDonnell*, 2014 WL 3545206, at *1 (declining to allow leading questions of family members unless at trial "these witness show themselves to be hostile or uncooperative."). Although the government's argument was vague, it appears the government will seek permission to ask Ms. Totani leading questions when she testifies about the commission

5

payments, even if she testifies consistently with her grand jury statement. ECF No. 50 at 12-13. Rule 611(c)(2), however, does not contemplate the government being allowed to ask its own witness leading questions on certain topics merely because the testimony is inconsistent with other evidence the government offers in its case-in-chief.

As much as the government may not like the final result, it has to concede that it has had ample opportunities to fully develop Ms. Totani's testimony through her extensive pre-trial cooperation and her immunity agreement with the government. Accordingly, the government's stated intention to seek to ask her leading questions on the select portions of her testimony that do not help the government's case is nothing more than a request for an unfair strategic advantage. It is the government's choice to call Ms. Totani as a witness, and it has to take the good with the bad. To be able to pick and choose the topics on which the government asks leading questions of a cooperating witness, based on the government's assessment of whether the anticipated testimony supports the government's case, is an unreasonable and dangerous proposed expansion of Rule 611. Furthermore, the government's planned method of asking the Court for permission to lead in the middle of Ms. Totani's direct examination (especially when the government already knows what she is going to say) is highly prejudicial and will inaccurately suggest to the jurors that she is not telling the truth or has unexpectedly changed her position on the stand, especially if the Court grants the government's request during her testimony.

Allowing leading questions during Ms. Totani's direct examination only would be appropriate if Ms. Totani began showing hostility toward the government during the examination or testified inconsistently with her grand jury testimony. *See McDonnell*, 2014 WL 3545206, at *1 (pledging to reconsider prohibition on leading questions if witness "hostile or uncooperative"); *St. Clair v. United States*, 154 U.S. 134, 150 (1894) (affirming allowance of leading questions, but

6

only after, on the stand, "the answers of the witness had taken [the attorney] by surprise"); *United States v. Brown*, 603 F.2d 1022, 1026 (1st Cir. 1979) (allowing leading questions of defendant's close friend "only after a lengthy direct examination" during which the witness's testimony was "replete with lapses of memory . . . [and] he was both evasive and adverse to the government"); *United States v. Dingle*, 12-30098, 2014 WL 6812457, at *2 (C.D. Ill. Dec. 3, 2014) (finding that "the Defendant has a strong argument that the assertions of the parties . . . cannot establish whether [a witness who had a relationship with the defendant,] is a hostile witness. The Court should observe the witness before making such a determination.").

The government has had every imaginable opportunity to fully develop Ms. Totani's testimony. She has been cooperative and helpful to the government in its multi-year investigation of Mr. Abramson. She has provided documentary evidence, candid insight into her personal life, and truthful testimony in the grand jury, most of which the government believes is favorable to its case. Accordingly, since the truth-seeking process strongly favors nonleading questions during direct examination, especially in criminal cases, the Court should exercise its broad discretion and issue a pre-trial ruling precluding the government from requesting leading questions in the middle of Ms. Totani's direct examination simply because the government believes her testimony about the commission payments is inconsistent with other evidence the Government will seek to admit.

## **CONCLUSION**

For the reasons stated above, Mr. Abramson respectfully requests that the Court issue a pretrial ruling precluding the government's plan to request to lead Ms. Totani during her direct examination based on the justifications the government has offered.

Dated: June 29, 2020 Respectfully submitted,

/s/ *Valarie Hays*
Valarie Hays (ARDC No. 6272380)
Matthew C. Crowl (ARDC No. 6201018)
Lauren Jaffe (ARDC No. 6316795)
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: 312.471.8700

*Counsel for Michael Abramson*

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 29, 2020, I caused the foregoing document to be electronically filed using the CM/ECF system, which will send notice of this filing to all counsel of record.

                                                */s/ Valarie Hays*
                                                Valarie Hays