UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 18 CR 681 |
| v. | Judge Virginia M. Kendall |
| MICHAEL ABRAMSON | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

The United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits its response to defendant's motion to dismiss Counts Three through Nine of the indictment (R. 80).

**I.     BACKGROUND**

Beginning in the 1990s, defendant, an attorney and business owner, began a romantic relationship with a woman named Jerilyn Totani. R. 1 ¶ 1(j).  During this time, defendant, owned and operated several companies, including Leasing Employment Services ("LES"), Eastern Advisors, and PayTech.  *Id.* ¶¶ 1(f) and (g). In around 2001, Outfront Media (formerly Viacom and CBS Outdoor, hereinafter "Outfront") retained defendant in connection with potential litigation with the Village of Rosemont relating to a land dispute involving several billboards in the area. During the course of his representation of Outfront, defendant connected Outfront representatives with a business associate, Robert Durkin.  Durkin helped Outfront negotiate a resolution to the dispute with Village officials (the "Rosemont Billboards Deal").  In or around June 2003, at defendant's direction, Outfront began directing payments to Eastern Advisors in connection with the Rosemont Billboards Deal.

1

Pursuant to an agreement between Eastern Advisors and Outfront, Eastern Advisors received 10% of the adjusted gross rent paid to Outfront for the Rosemont Billboards. Thereafter, Outfront made quarterly payments of approximately $29,500 to Eastern Advisors. *Id.* ¶ 1(m). At defendant's direction, the bookkeeper for LES, Eastern Advisors, and PayTech, Jill Roth, had Eastern Advisors make regular payments of $2,500 to Totani on the 15th and 30th of each month, booking those payments as "advance on commissions." Irrespective of the amount of money Eastern Advisors received from Outfront, Totani received $2,500 on the 15th and 30th of each month. Defendant also directed Roth to have Eastern Advisors pay Totani's expenses, including credit card bills and medical bills, and to reclassify any funds paid to Totani in excess of 50% of the Outfront money to a loan account (the "JT Loan Account").

Between 2006 and 2014, defendant caused Eastern Advisors to make approximately $681,000 in payments either to or on behalf of Totani and to record the payments as loans from Eastern Advisors to Totani through the JT Loan Account. While characterized as "loans" from Eastern Advisors, these payments were in effect taxable distributions from Eastern Advisors to defendant. Between its inception in 2002 and 2013, Eastern Advisors, the entity through which defendant provided hundreds of thousands of dollars to Totani in this manner, was required to and did not file an annual United States Corporation Income Tax Return, Form 1120, including for tax years 2006 through 2012. *Id.* ¶ 1(q).

In or around October 2013, the IRS began requesting records relating to Eastern Advisors and made a formal request to another business associate of

defendant through the Mexican tax authorities. Subsequently, between 2014 and 2015, defendant caused his tax prepares to attempt to, among other things, amend the previously-filed corporate returns for LES for tax years 2006 through 2012. The proposed amendments included consolidating the tax information of LES, PayTech, and Eastern Advisors into a single tax return per year (thereby filing tax information for PayTech and Eastern Advisors with the IRS for the first time). Defendant's tax preparers assembled the amended returns and then defendant filed them by mailing them to the appropriate IRS service center (the Cincinnati Service Center).[1] Accordingly, the first page of each of the Form 1120X returns for tax years 2006 through 2012 bears a stamp showing the that the return was postmarked August 8, 2014, and received at the Cincinnati Service Center on August 12, 2014. For example, the stamps on the filed Form 1120X for 2011 appeared as follows:



Each of these returns was signed by defendant—as President of LES—on August 5, 2014. The sole exception was the Form 1120X for 2009, which defendant apparently signed on August 6, 2014. This 2009 return was also the only return that, as

---

[1] Defendant also enclosed a copy of the determination request letter described below.

defendant noted in his motion (R. 80 at 6), had the language, "ACCEPTED AS FILED," crossed out and the letter "D" written in.[2] *See* R. 82 Ex. C.

In addition, on or about August 8, 2014, defendant executed a "Determination Letter Request," which defendant addressed to IRS's Office of the Director, Technical Service, in Laguna Niquel, California. R. 82 Ex. A. The letter requested, "a determination on behalf of Parent [LES] and Subsidiaries [PayTech and Eastern Advisers] that they be allowed an extension of time under . . . the Procedure and Administrative Regulations for Parent and Subsidiaries to file an election . . . in order to allow the affiliated group to file amended consolidated returns for the years 2006 through 2012." *Id.* at 3. Of note, defendant's request letter stated: "The taxpayer ***has filed amended consolidated returns for the years 2006 through 2013***." *Id.* at 6 (emphasis added).

On or about March 16, 2015, IRS's Office of Associate Chief Counsel (Corporate) sent defendant a letter informing him that his request letter would not be processed because defendant had not provided additional information that the IRS had requested. R. 82 Ex. B. The IRS stated that the request letter would not be processed and that no further action would be taken in that office and the case was considered closed. *Id.* The letter said nothing about defendant's amended returns not being filed.

\*     \*     \*

---

[2] Defendant speculates that this "D" stood for "Denied." R. 80 at 6. At trial, the government intends to call IRS Court Witness Coordinator Carolyn Sharrah as a custodian witness for the IRS. Sharrah recently reviewed the 2009 return and the government expects that Sharrah will testify that the "D" stands for "Duplicate," not "Denied."

The Form 1120X for 2006 through 2012 that defendant had his tax preparers prepare and that he filed included improper deductions related to the payments made to Totani from Eastern Advisors and had a schedule referencing a loan receivable from "JT" (Jerilyn Totani), which, in truth, reflected additional personal payments from Eastern Advisor to Totani (and therefore were actually distributions to defendant). The personal payments were not deductible by LES and those additional payments were not a loan and, thus, not an asset to Eastern Advisors as stated. Based on these false statements, the Form 1120Xs for years 2006 through 2012 were charged in the indictment in this matter as Counts Three through Nine—each one alleging a violation of Title 26, United States Code, Section 7206(1).

On December 27, 2021, defendant filed a motion to dismiss Counts Three through Nine. R. 80. Defendant argues that "the amended returns that the government alleges contain false statements in Counts 3-9 were not filed as a matter of law because the IRS expressly rejected the request to file them." *Id.* at 1. Defendant contends that his "innocence or guilt of the charged offenses can be determined solely on an issue of law," because "it is well accepted that when an amended return is sent to the IRS past the filing deadline, it is within the sole discretion of the IRS to accept or reject it." *Id.*

As explained below, the Court should reject defendant's arguments and deny his motion in its entirety. First, defendant's motion amounts to a request for "summary judgment," which is not available under federal criminal rules. Second,

defendant in fact filed the seven amended returns in question and the government will introduce evidence of the filing of the returns at trial.

## II.     Defendant's Motion is Procedurally Improper.

By his motion, defendant in essence argues that no dispute of material fact exists about whether he filed the returns in question with the IRS and therefore the Court should dismiss Counts Three through Nine at this time as a matter of law. In other words, defendant's motion is a motion for summary judgment—a procedural vehicle not provided for in the Federal Rules of Criminal Procedure. *See United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence. . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.") (internal quotations omitted); *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000) ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence."); *United States v. Budic*, No. 20 CR 168, 2021 WL 5905944, at *3 (E.D. Wisc. Dec. 14, 2021) ("[T]here is no summary judgment analog in criminal cases.") (internal quotation omitted).

It is well-established in this circuit that a defendant seeking pre-trial dismissal ordinarily may not "transcend the four-corners of the indictment." *United States v. DiFonzo*, 603 F.2d 1260, 1263 (7th Cir. 1979); *see also United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) ("An indictment is reviewed on its face, regardless of the

strength or weakness of the government's case."); *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a summary trial of the evidence. Such a motion is directed only to the validity of the indictment or the information, and it tests only whether an offense has been sufficiently charged.") (internal citation and quote marks omitted); *see also United States v. Apple*, 927 F. Supp. 1119, 1121 (N.D. Ind. 1996) ("Put another way, a motion to dismiss an indictment is more akin to a civil Rule 12(b)(6) motion than to a civil summary judgment motion."). Defendant's motion violates these limits by relying on extraneous evidence, in particular the IRS's letter dated March 16, 2015, informing defendant that his request letter would not be processed. This Court should reject these efforts.

Finally, as detailed below, the evidence defendant presents in support of his motion is incomplete and the government disagrees that defendant's returns were not filed as a matter of law. At trial, the government is prepared to offer relevant evidence to prove that defendant's amended corporate tax returns were, in fact, filed. Accordingly, separate and apart from the fatal procedural flaw to defendant's motion, the factual question at issue—whether, in fact, what defendant did here constituted "filing" of the amended returns sufficient to satisfy 7206(1)'s requirement to "make and subscribe" a return—is very much in dispute and therefore defendant's motion should be denied.

## III. The Charged Amended Returns Were Filed with the IRS.

As he correctly recognized in his letter to the IRS's Office of the Director, Technical Service, defendant in fact "filed amended consolidated returns for the years

7

2006 through 2013." R. 82 Ex. A at 6. Defendant made these filings by mailing the amended returns to the Cincinnati Service Center, consistent with the IRS's requirements. According to the IRS, "Your return is considered filed on time if the envelope is properly addressed, has enough postage, is postmarked, and is deposited in the mail by the due date." Tax Topic No. 301, https://www.irs.gov/taxtopics/tc301 (last accessed February 4, 2022). This understanding of "filing" has been recognized by the courts. *See, e.g., Davis v. United States*, No. 99 6073, 2000 WL 194111, at *2 (Fed. Cir. 2000) ("[T]he general rule [is] that to be properly filed, a claim for refund [e.g., a return] must be physically delivered to and received by the IRS.") (quotation marks and citations omitted); *In re Smith*, 96 F.3d 800, 801 (6th Cir. 1996) ("Generally, a tax return is filed on the date that it is received by the United States. A familiar exception to that rule applies to tax returns mailed with the United States Postal Service, which are considered 'received' by the United States (and therefore 'filed') on the date of the postmark.") (internal citations omitted). Here, defendant followed these requirements for filing LES's amended returns when he mailed the Forms 1120X to the Cincinnati Service Center for his Chicago-based corporation.[3]

---

[3] The relevant Treasury Regulation provides that "[a]mended returns of corporations shall be filed with the service center serving the principal place of business or principal office or agency of the corporation." 26 C.F.R. 1.6091-2(e)(2); *see Allnutt v. Commissioner*, 523 F.3d 406, 412-13 (4th Cir. 2008) (for statute of limitations purposes, return is filed when "delivered, in the appropriate form, to the specific individual or individuals identified in the Code or Regulations"). The Form 1120 and Form 1120X instructions identify which service centers should receive amended corporate returns, depending upon the corporation's principal place of business. *See* Form 1120X Instructions (Rev. 2011), p.3 (directing taxpayers to "[f]ile this form at the applicable Internal Revenue Service Center where the corporation filed its original return") (https://www.irs.gov/pub/irs-prior/f1120x--2011.pdf); Form 1120 Instructions, p. 3 (Rev. 2011) (telling taxpayers "[w]here [t]o file" depending upon

Defendant's argument that the Forms 1120X were not filed seems to conflate "filing" of an amended return with the IRS's "acceptance" of the proposed amendments. Defendant cites several cases that acknowledge that the IRS has discretion not to accept the proposed amendments in an amended return. *See* R. 80 at 4-5. But these cases themselves describe the unaccepted amended returns in question as having been "filed" with the IRS. For instance, in *Dover Corporation & Subsidiaries v. Commissioner*, the court held that, "[w]here an amended return *has been filed* for a year as to which the IRS has already issued notice of a deficiency, the agency has ample discretion to *refuse to accept* the amended return." 148 F.3d 70, 73 (2d Cir. 1998) (emphases added); *see also Koch v. Alexander*, 561 F.2d 1115 (4th Cir. 1977) (describing the amended return in question as "filed," but holding that the IRS was within its discretion not to "accept[]" the return after having assessed and attempted to collect a deficiency for the tax year in question). Indeed, the Supreme Court seemed to acknowledge this distinction in the quotation that defendant provides (R. 80 at 5) from *Baradacco v. Commissioner*, which distinguished between the "taxpayer's filing" and the "Commissioner's acceptance[]" of an amended return. 464 U.S. 386, 393 (1984).

Additionally, at least one case has squarely held that a filing requirement under Section 7206(1) is satisfied even if the IRS does not process a filed return; all that matters is that the IRS receive it through the proper channel. For instance, in

---

the location of the "corporation's principal business, office, or agency" and directing Illinois corporations to mail returns to the Cincinnati Service Center if their total assets are less than $10 million and Schedule M-3 is not filed) (https://www.irs.gov/pub/irs-prior/i1120--2011.pdf).

*United States v. Hanson*, 2 F.3d 942 (9th Cir. 1993) (*superseded on other grounds by statute*), the Ninth Circuit rejected an argument to the contrary as "meritless":

> Hanson's assertion that the 1040 form and the 1096 and 1099 forms were not "filed" because they were never fully processed by the IRS is meritless. Evidence was presented that Hanson personally mailed the forms and that the IRS received them. A return is "filed" at the time it is delivered to the IRS. *Emmons v. Commissioner*, 898 F.2d 50, 51 (5th Cir. 1990); *First Charter Fin. Corp. v. United States*, 669 F.2d 1342, 1345–46 (9th Cir. 1982).

*Id.* at 946; *see also United States v. Morse*, 613 F.3d 787, 790, 793 (8th Cir. 2010) (rejecting judicial estoppel argument in 7206(1) prosecution that rested on the fact that an IRS paralegal had signed an affidavit filed in a civil tax case for the same tax years that stated that according to IRS records the defendant had not filed returns for those years; the court noted that the declaration "can be reasonably explained" because they were routed to the IRS frivolous return department and, as an IRS Special Agent explained in the case, "unlike most returns, returns routed in this manner may not be processed completely"); *United States v. Horwitz*, 247 F. Supp. 412, 413 (N.D. Ill. 1965) ("the conduct proscribed by § 7206(1) does not mature into an indictable offense until the date of the return's actual receipt by the Internal Revenue Service"). Relatedly, at least one court has rejected the argument that, to violate 7206(1) or 7206(2), a defendant must file or assist in filing a "valid" return that would suffice to avoid liability under 26 U.S.C. § 7203 for failing to file a return. *See United States v. Marston*, 517 F.3d 996, 1001-02 (8th Cir. 2008) (noting that the indictment just referred to particular forms the defendant filed, that the text of 7206(1) does not limit its application to tax returns, and stating that "[t]he critical allegation in each count of the indictment is that Marston filed, or assisted in filing,

10

documents which the filer intended to be a tax return, which falsely stated the amount of income earned by Marston or his employees").

A violation of 7206(1) is in essence a perjury offense. Thus, whether a return is "processed" or "accepted" by the IRS is truly irrelevant. Section 7206(1) criminalizes the false statements that a defendant made, not the tax implications of the false statements. That is why the statute's materiality requirement is framed in the hypothetical (i.e., the potential for hindering the IRS's efforts to monitor and verify the tax liability of the corporation and taxpayer). This understanding is consistent with the above-described caselaw interpreting the time the offense is committed as being when the return is filed—i.e., received by the IRS—not when it's signed by defendant or processed by the IRS. *See e.g.*, *Hanson*, 2 F.3d at 946; *Horwitz*, 247 F. Supp. at 413; *United States v. Swanson*, 112 F.3d 512, *1-2 (4th Cir. May 5, 1997) (unpublished).

Finally, it is of no moment that the returns in question were amended returns, because cases have specifically acknowledged that liability for violating § 7206(1) can rest on the submission of a false amended return form. *United States v. Clayton*, 506 F.3d 405, 411 (5th Cir. 2007) ("Form 1040X can give rise to liability for filing a false tax return."); *United States v. Adams*, 314 F. App'x 633, 638 (5th Cir. 2009) ("An amended tax return, Form 1040X, can give rise to liability for filing a false tax return in the same manner as can any other tax return."); *cf. United States v. Useni*, 516 F.3d 634, 649 n.10 (7th Cir. 2008) (rejecting sufficiency challenge to a § 7206(1) conviction for filing a false amended tax return).

11

In summary, defendant caused the returns in question to be filed with the IRS by mail. Defendant mailed the returns to the Cincinnati Service Center, consistent with the requirements under the law for filing amended returns. Once those returns were received, they were filed. That the IRS's Office of Associate Chief Counsel (Corporate) later took no action on defendant's request letter does not undermine the fact that defendant filed the amended returns. Defendant's motion should therefore be denied.

## III.   THE GRAND JURY WAS NOT MISLED

As demonstrated above, the returns underlying Counts Three through Nine were in fact filed with the IRS. Accordingly, the IRS special agent was providing truthful and accurate evidence to the Grand Jury when he testified to those facts. Further, for an indictment to be dismissed based on a misrepresentation to the Grand Jury, the government must have willfully and knowingly misled the grand jury through the knowing use of false testimony. *See United States v. Udziela*, 671 F.2d 995, 998 (7th Cir. 1982); *United States v. Useni*, 516 F.3d 634, 656 (7th Cir. 2008). At best, there is a dispute here over the factual question of whether the returns were filed, which question will be resolved at trial. The testimony provided to the Grand Jury had a reasonable basis in fact and law (detailed above) and was provided in good faith. There is no evidence of any willful manipulation of the Grand Jury. Defendant's argument on this point is nothing more than attempted end-run around the rule prohibiting consideration of facts outside the indictment for the purposes of a motion to dismiss. The Court should reject this effort and deny defendant's motion.

## IV.    CONCLUSION

For the reasons stated above, the government respectfully requests that the Court deny defendant's motion to dismiss Counts Three through Nine of the indictment.

Respectfully submitted,
JOHN R. LAUSCH, JR.
United States Attorney

By:    s/ Andrew C. Erskine
Andrew C. Erskine
Richard M. Rothblatt
Assistant United States Attorneys
219 S. Dearborn Street
Chicago, Illinois 60604
(312) 353–5300

13