UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No.: 18 CR 681 |
| v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| MICHAEL ABRAMSON, | ) | |
| | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE
TO MOTION TO DISMISS COUNTS 3-9 OF THE INDICTMENT**

Defendant, Michael Abramson, by and through his attorneys, Nishay K. Sanan and Cece White, respectfully writes in reply to the government's response to his motion to dismiss counts 3-9 of the indictment. In support of his motion, Mr. Abramson replies as follows:

I. **Defendant's Motion is Procedurally Proper in that it Asks the Court to Resolve an Issue of Law**

The Defendant's position is not that there is no dispute of a material fact as the government claims; the Defendant's position is that the issue is not one of fact at all. Mr. Abramson moves to dismiss counts 3-9 of the indictment because these counts are "subject to a defense that may be decided solely on issues of law." *United States v. Labs of Virginia, Inc.*, 272 F. Supp. 2d 765, 768 (N.D. Ill. 2003). In *Labs of Virginia*, the Defendant moved to dismiss an indictment charging violations of the Lacey Act. *Id.* The Act requires the government to allege that defendants sold wildlife in violation of state, federal, or foreign law. *Id.* While the indictment did properly allege this element of the offense, the Defendants argued that their conduct would not violate the Indonesian wildlife law alleged, and thus, the Defendant could not have committed a violation of the Lacey Act as a matter of law. *Id.* at 768-69. While the motion was ultimately denied, the Court did consider its merit, analyzing whether the defense could be decided solely on issues of law. *Id.*

Similarly, here, the Defendant moves for dismissal based on a defense that can be determined as a matter of law. The motion does not ask the Court to consider whether there is

1

sufficient evidence that Mr. Abramson filed the amended tax returns. The Defendant instead asks the Court to determine whether amended corporate tax returns, mailed outside the applicable deadlines, that are expressly rejected by the IRS, can be considered "filed with the IRS" under § 7206(1). Because this is an element of the charged offense, a determination that the amended returns were not filed would resolve counts 3-9 solely on an issue of law. Thus, the motion is proper.

## II. The Amended Returns Were Not "Filed," as a Matter of Law

The amended returns in counts 3-9 were not filed as a matter of law and the government's arguments do not persuade otherwise. The government argues that the returns were filed based on the following: (1) The Defendant mailed the returns, stating in his letter that the returns were filed; (2) There is a difference between a taxpayer filing a return and the IRS accepting a return and thus, an amended return that is rejected by the IRS is still filed with the IRS; and (3) In the specific context of § 7206(1), whether the amended return was accepted is "truly irrelevant," and a fraudulent amended return can give rise to criminal liability under § 7206(1). The Defendant addresses each below.

### A. "Filing" Does Not Mean Mailing in the Context of Amended Returns Mailed Past the Due Date

The mailing in this case does not render the amended returns filed because the deadline for filing had passed. The government correctly states that personal income tax returns are "filed on time if the envelope is properly addressed, has enough postage, is postmarked and is deposited in the mail by the due date." (ECF No. 91 at 8).[1] However, that is not what happened here. The returns were not deposited in the mail by the due date. Thus, using this definition of filed, the returns at issue in counts 3-9 would not qualify.

---

[1] Quoting Tax Topic No. 301: When, How, and Where to File, IRS.gov, (Rev. Jan. 24, 2022), available at: https://www.irs.gov/taxtopics/tc301

2

Further, the mailbox rule described in the government's response "only applies to the initial determination of whether a return is timely filed." *In re Smith*, 96 F.3d 800, 801 (6th Cir. 1996) citing *Emmons v. Commissioner*, 898 F.2d 50, 51 (5th Cir. 1990). Here, the period for filing amended consolidated returns had expired and thus, the mailbox rule is "irrelevant to determining the exact date of filing." *Smith*, 96 F.3d at 802. In both cases cited by the government, the Court held that the returns were not timely filed despite claims that they were mailed to the IRS within the deadline. *Id.* at 801; *Davis v. United States*, 99 6073, 2000 U.S. App. LEXIS 2302, at *7. In *Davis*, the Court upheld a dismissal of a complaint seeking payment of a refund because Mr. Davis had not mailed an amended return within the applicable deadline. Thus, he failed to file the refund claim and the court had no jurisdiction to enforce it. *Davis*, at *6-7. In *Smith*, the Court held that a tax debt was not dischargeable in the petitioner's bankruptcy because he had not filed his returns two years before his bankruptcy petition. *Smith*, 96 F.3d at 802-03. Here, the Defendant likewise did not file his returns within the applicable period. The fact that he mailed them to the IRS, at a time other than that allowed by the IRS, does not change that result.

The government appears to place importance on the fact that Mr. Abramson stated in his letter that he considered the amended returns filed. (ECF No. 91 at 4, 7). It is not the taxpayer's opinion that determines whether he has complied with the tax code, and it is surprising that the government would suggest otherwise. Under this logic, a taxpayer charged with failure to file under 26 U.S.C. § 7203 could mail an amended return the same day as his arraignment and that return would be "filed," if it was accompanied by a letter from the taxpayer stating that he considered it filed, regardless of the deadline for filing it. In the context of the failure to file statute and other similar provisions, Courts have rejected the argument that the late filing of returns negates liability or evidences a lack of willfulness. *See e.g. United States v. Ming*, 466 F.2d 1000, 1005 (7th Cir. 1972) (explaining that the subsequent late filing of returns is immaterial to whether Defendant willfully

3

failed to file tax returns by the due date because "punctuality is important to the fiscal system"); *United States v. Quinn*, No. 09-20075, 2011 U.S. Dist. LEXIS 1056, at *8-9 (D. Kan. Feb. 3, 2011) (rejecting Defendant's argument that payment of taxes after the due date negates liability, explaining that the criminal statutes on tax assessment incorporate the concept of a deadline for both filing and payment).

If a Defendant who mails an amended return past the deadline still "failed to file" a return under § 7203, then a Defendant mailing an amended return past the deadline cannot qualify as one who "filed a return with the IRS," under § 7206. 26 U.S.C. §§ 7203, 7206; *See also Pattern Crim. Jury Inst. of the 7th Cir.,* 7206(1) Elements, 944 (2020) (stating that the government must prove beyond a reasonable doubt that 'the defendant filed or caused to be filed the income tax return with the IRS). The section with which Mr. Abramson is charged is one that requires that a material, false statement was made within a specific context – a return that was filed with the IRS. The returns at issue in Counts 3-9 were not filed. Adopting the government's definition of "filed," creates a precedent allowing any taxpayer to immunize themselves from prosecution for tax-related offenses by mailing late returns at any time.

### B. The Government's Distinction Between "Filed," and "Accepted," Does Nothing to Resolve the Issue

The government next argues that an amended return does not need to be "accepted," by the IRS to qualify as "filed," by the IRS and cites to cases in which Courts have used the term "filed," to describe returns that the Court ultimately found ineffective. (ECF No. 91 at 9). However, the cases cited do not address the meaning of these terms and the holdings do not place importance on this distinction. For example, the government cites *Dover Corporation & Subsidiaries v. Commissioner,* 148 F.3d 70 (2d Cir. 1998). There, the petitioner submitted amended returns claiming a refund and the IRS refused to accept the amended returns. *Id.* at 72-73. The petitioner moved to compel the IRS to pay the refund. *Id.* at 71. The Court denied that motion, stating:

4

> Dover had no claim for a refund unless the IRS accepted its amended returns. Although IRS regulations provide that, as to an amount shown as an overpayment on either an original or an amended income tax return, that return "shall constitute a claim for refund or credit," 26 C.F.R. § 301.6402-3(a)(5), there is nothing in either the Internal Revenue Code or the regulations thereunder that requires the IRS "to accept the amended tax return in place of the original return previously filed."

*Id.* at 72 citing *Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir. 1977).

While the Court may use the words in its opinion, this holding does not distinguish between a "filed return" and an "accepted return." Instead, it states that the effect of the rejection is the same as if there had never been an amended income tax return showing an overpayment. If the petitioner had filed an amended return that showed an overpayment, he would have had a claim for refund. However, the Court held that he did not. *Id.* Thus, the effect of the IRS rejecting the amended return is as if an amended return was never filed with the IRS.

Similarly, in *Koch v. Alexander*, the Court did not hold that a distinction between "filed" and "accepted," determined any issue. 561 F.2d 1115 (4th Cir.). There, the original returns filed by the taxpayers showed taxes owed in excess of $20,000. *Id.* at 1117. The amended returns that the taxpayers later submitted showed zero tax liability, but the amended returns had been rejected by the IRS. *Id.* The issue before the Court was whether there was a tax deficiency, meaning "the amount by which the tax assessed by the IRS exceeds the amount shown by the taxpayer on his return." *Id.* at 1118 citing 26 U.S.C. § 6211(a). The taxpayers claimed that because they had filed the amended returns, there was a tax deficiency of around $20,000. To avoid the terms, "filed," and "accepted," the decision before the Court can be described as such - if the amended return controlled, there was a deficiency of around $20,000. ($20,000 (IRS amount) – $0 (amended return taxpayer amount) = $20,000 (deficiency)). If the original return controlled, the amount assessed by the taxpayer and that accessed by the IRS were the same and there was no deficiency ($20,000 (IRS amount) - $20,000 (original return taxpayer amount) = 0 (deficiency). *Id.* at 1117. The Court held that there was no deficiency. *Id.* at 1118. Thus, the effect of the IRS rejecting the amended return was as if the

5

amended return did not exist. Regardless of what word was used in individual sentences, the Court held that the return that determined the issue was the one that was accepted by the IRS and because the IRS had rejected the amended return, the original return controlled.

The same logic applies here. The IRS rejected the amended returns. Thus, the returns that Mr. Abramson "filed," with the IRS are not the ones referenced in counts 3-9, but the original returns for those same years. Under the cases cited by the government, the effect of a rejection within the discretion of the IRS is to treat the amended returns as if they never existed.

Finally, the government cites *Baradacco v. Commissioner* as a case that "distinguished between" filing and acceptance. 464 U.S. 386, 393 (1984). However, this case again does not depend upon any such distinction. Further, it states that neither filing nor acceptance is an automatic right, supporting the Defendant's position that the returns could not have been "filed" without permission. *Id.* The Court explained that the Internal Revenue Code "does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace." *Id.* In short, the mere request to amend a return past the filing deadline does not amount to a taxpayer filing an amended return nor does it amount to the commissioner accepting an amended return. If the commissioner had accepted the Defendant's amended return, it would be filed. However, in the present case, the IRS explicitly rejected the return and thus, the answer is clear – the amended returns were not "filed," nor were they "accepted," to the extent that it matters.

### C. The Government's Arguments Specific to § 7206 Do Not Determine Whether the Returns Were Filed

The government next makes arguments more specific to the application of § 7206(1), but these arguments do nothing to indicate that the returns should be considered filed. First, the government cites *Untied States v. Hanson* as a case that held "a filing requirement under section 7206(1) is satisfied even if the IRS does not process a filed return." (ECF No. 91 at 9). The case

does not contain this holding and is otherwise distinguishable. In *Hanson*, the Court was asked to determine whether there was sufficient evidence to find that the Defendant had filed a return that was false as to a material matter. 2 F.3d 942, 946 (9th Cir. 1993). The Court held that there was sufficient evidence that the fraudulent returns were filed because the evidence showed they were personally mailed by the defendant and that the IRS received them. *Id.* This meant they were "filed" upon delivery based on the Court's cited cases analyzing the mailbox rule. *Id.* citing *Emmons v. Commissioner*, 898 F.2d 50, 51 (5th Cir. 1990); *First Charter Fin. Corp. v. United States*, 669 F.2d 1342, 1345-46 (9th Cir. 1982).

      As explained above, the mailbox rule applies to determine the filing date of returns mailed by the due date. *Smith*, 96 F.3d at 801-02. It is not relevant here because the issue is not *when* the returns were filed but *whether* they were filed at all. In *Hanson*, the Court rejected the argument that the forms were not filed because they were never fully processed by the IRS. *Hanson*, 2 F.3d at 946. However, the Defendant makes no argument as to how fully the returns were processed. The issue here is that the Defendant did not have the right to file amended returns because the period of time in which he could do so had expired and when he attempted to file the returns under discretionary provisions allowing them to be filed only with permission from the IRS, his request to do so was explicitly rejected. Mr. Abramson could not file amended tax returns unless he got permission from the IRS. *Baradacco*, 464 U.S. at 393. The IRS rejected his request to file amended tax returns.

      The government goes on to argue that whether a return is processed or accepted is "truly irrelevant." (ECF No. 91 at 11). However, whether a return was filed is not only relevant, but an element of the offense. Further, the government notes that criminal liability can attach to any fraudulent return filed with the IRS, including an amended return. (*Id.*). The Defendant does not argue otherwise, but the amended return must in fact, be filed. While the government is correct that

7

some returns are considered filed on the date that they are received under the mailbox rule, that is not the case for an amended corporate return filed after the due date.

In the context of Form 1120x, "a return filed before the due date is considered filed on the due date."[2] However, when the time to file has expired, the amended return can only be filed under certain conditions. Relevant here, the amended returns could only be filed if the extension was granted by the commissioner, based on a finding that the parent and subsidiary acted reasonably and in good faith. *See* 26 C.F.R. §§ 301.9100-1, 301.9100-3. Thus, the returns at issue in counts 3-9 cannot have been filed on the due date because that date had passed. They cannot have been filed on the date that they were mailed to the IRS because the mailbox rule does apply when the due date has passed. They cannot have been filed on the date that they were received by the IRS because there is no automatic right to file the return, there was no finding of good faith, no extension was granted, and the request to file the amended returns was explicitly denied. Thus, the amended returns could not have been filed as a matter of law.

### III.    Grand Jury

The Defendant's motion concerning the grand jury testimony is dependent on the issue of whether the returns were filed. However, to the extent that the Court agrees that they were not filed as a matter of law, the testimony before the grand jury was misleading and prejudicial. If the grand jury had been told that the Defendant who was charged with filing false tax returns did not file the false tax returns, it seems unlikely that the jury would have found probable cause on counts 3-9.

### IV.    Conclusion

In sum, the government's interpretation of the filing requirement in § 7206(1) is that an amended tax return is automatically filed upon either mailing by the taxpayer or receipt by the IRS with no regard to deadlines. If that's what it means to "file," it is unclear why the government alleges

---

[2] Form 1120-x Instructions, IRS.gov, available at: https://www.irs.gov/pub/irs-pdf/f1120x.pdf

that Eastern Advisors was required to, and did not, "file" corporate income tax returns for 2006-2012. (ECF No. 1 at 1q). It is exactly these returns that the government now argues were filed as a matter of law. Using the government's definition, Eastern Advisors did file tax returns because the consolidated amended returns were mailed by Mr. Abramson and that qualifies as "filing," despite the applicable deadline for filing them, and despite the IRS explicitly rejecting them. However, this is not what it means to "file a return with the IRS," as even the government recognizes by repeatedly claiming that the very same returns were not filed. Courts have rejected similar definitions of "filed," in the context of amended returns in the past, finding:

> It would be utterly disruptive of the administration of the tax laws if a taxpayer could disregard his return and automatically change the assessment based thereon by making an amended return in his favor long after the expiration of the time for filing the original return.

*Koch*, 561 F.2d at 1117.

Here, the government argues for a definition of filing that allows Mr. Abramson to automatically file an amended return long after the expiration of the time for filing the original return. It is unlikely the government would make the same argument in any other context because in this case, unlike many others, the alleged false statements are in the amended return itself. Regardless of the scenario, the law is the same. The returns involved in counts 3-9 were not filed as a matter of law.

Based on the above and the arguments contained within the Defendant's original motion, Mr. Abramson respectfully requests that this Court grant his motion to dismiss counts 3-9 of the indictment.

Respectfully submitted,

*/s/ Nishay K. Sanan*
nsanan@aol.com

Respectfully submitted,

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111