IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 18 CR 681 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| MICHAEL ABRAMSON. ) | |

### MEMORANDUM OPINION AND ORDER

A federal grand jury returned an indictment against Defendant Michael Abramson charging him with 13 counts of filing false tax returns in violation of 26 U.S.C. § 7206(1). (Dkt. 1). Abramson moved to dismiss Counts 3–9 of the Indictment, arguing that the applicable returns were never filed as a matter of law. (Dkt. 80). For the following reasons, the Court denies Abramson's Motion. [80]

### BACKGROUND

The government has charged Defendant Michael Abramson with making false statements in both his personal tax returns and in tax returns that he directed to be prepared and submitted for Leasing Employment Services (LES), a business in which he has an ownership interest. (Dkt. 1). Counts 1, 2, 11, and 13 of the Indictment charge Abramson with knowingly making false statements on his personal tax returns for tax years 2011–2014. (Dkt. 1 at 1–6; 15, 17). Counts 10 and 12 charge Abramson with knowingly making false statements on LES's corporate tax returns for tax years 2013 and 2014. (*Id.* at 14, 16). Counts 3–9 charge Abramson with knowingly making false statements on Forms 1120X for LES for tax years 2006–2012.[1] (*Id.* at 7–13).

---

[1] A Form 1120X is used by a corporation to "[c]orrect a Form 1120 as originally filed, or as later adjusted by an amended return, a claim for refund, or an examination, or to make certain elections after the prescribed deadline."

1

The Indictment alleges that, on or about August 12, 2014, Abramson

> did willfully make and subscribe and caused to be made and subscribed, an Amended United States Corporate Income Tax Return 1120X for Leasing Employment Services with schedules and attachments for the calendar year 2006, which return was verified by a written declaration that was made under penalties of perjury, and filed with the Internal Revenue Service, which return defendant did not believe to be true and correct as to every material matter . . . .

(*Id.* at 7). Each of Counts 3–9 repeats the same language for the respective calendar years from 2006 through 2012. (*Id.* at 7–13). Each Count then details a different dollar amount of allegedly improper deductions that Abramson claimed for that year, but otherwise, the operative language is identical. (*Id.*)

Abramson moves under Federal Rule of Criminal Procedure 12(b)(1) to dismiss Counts 3–9 of the indictment. (Dkt. 80). He argues that they can be resolved as a matter of law because the 1120X Forms on which those charges are based were never filed. (*Id.*) The Government opposes the motion. (Dkt. 91).

## LEGAL STANDARD

"A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). When a 12(b)(1) motion seeks to dismiss an indictment, "its resolution will turn on pure questions of law regarding the sufficiency of the indictment's allegations." *United States v. Dion*, 37 F.4th 31, 33–34 (1st Cir. 2022) (citing *United States v. Brissette*, 919 F.3d 670, 675 (1st Cir. 2019)). To be legally sufficient, an indictment must only "(1) state[ ] the elements of the offense charged; (2) fairly inform[ ] the defendant of the nature of the charge so that he may prepare a defense; and (3) enable[ ] him to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United*

---

*About Form 1120-X, Amended U.S. Corporation Income Tax Return*, INTERNAL REVENUE SERV., https://www.irs.gov/forms-pubs/about-form-1120-x, (last updated Jan. 9, 2023).

*States v. Chanu*, 40 F.4th 528, 539 (7th Cir. 2022) (quoting *United States v. Miller*, 883 F.3d 998, 1002 (7th Cir. 2010)); *see also* Fed. R. Crim. P. 7(c)(1).

When considering a motion to dismiss a criminal indictment, the Court assumes all facts in the indictment are true and "view[s] all facts in the light most favorable to the government." *United States v. Black*, 469 F. Supp. 2d 513, 518 (N.D. Ill. 2006) (quoting *United States v. Yashar*, 166 F.3d 873, 880 (7th Cir. 1999)); *see also United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010) (per curiam) ("An indictment is reviewed on its face, regardless of the strength or weakness of the government's case." ).

### DISCUSSION

To prove a criminal offense under § 7206(1) of the Internal Revenue Code,

> the government must prove that the defendant (1) filed a return, statement, or other document that was false as to a material matter; (2) signed the return, statement or other document under penalty of perjury; (3) did not believe the return, statement or other document was true as to every material matter; and (4) willfully subscribed to the false return with the specific intent to violate the law.

*United States v. Hanson*, 2 F.3d 942, 945 (9th Cir. 1993) (citing *United States v. Bishop*, 412 U.S. 346, 350 (1973)); *see also* I.R.C. § 7206(1). Filing the return is an essential element of the charge. *Id.*; *see also United States v. Pansier*, 576 F.3d 726, 736 (7th Cir. 2009) ("Section 7206(1) is a perjury statute, and therefore requires only that the taxpayer file a return which he does not believe to be true and correct as to every material matter." (internal citations and quotation marks omitted)).

Abramson insists that the returns in question—Forms 1120X for the tax years 2006 through 2012—were never filed as a matter of law, so he cannot be charged under § 7206(1) for any allegedly false statements made therein. (Dkt. 80). He does not deny that he ever sent the IRS these forms, or that the IRS received them. (In any event, such denials would raise a factual defense to

be asserted at trial.) Rather, Abramson states that in August 2014 he sent the Forms 1120X along with a letter on behalf of LES "requesting a determination that LES and its subsidiaries be allowed an extension of time to file an election under § 1.1502-75 of the Income Tax Regulations which would allow the affiliated group to file amended consolidated returns for the years 2006–2012." (Dkt. 80 at 3). He later received a letter dated March 16, 2015, from the IRS's Office of Associate Chief Counsel (Corporate) that, in Abramson's words, indicated the IRS had "expressly rejected the request to file them." (*Id.* at 1).

### A. Indictment Sufficiently Alleges § 7206(1) Violations

As a threshold matter, Counts 3–9 of the Indictment are legally sufficient. The government has alleged each element of a § 7206(1) violation: that Abramson filed or caused to be filed with the IRS Forms 1120X that he signed under penalty of perjury, knowing they contained material, false statements. *See Chanu*, 40 F.4th at 539. The Indictment fairly informs him of the charges' nature; each count includes the specific claimed deductions to which Abramson was allegedly not entitled but that he knowingly subscribed to in the return. *Id.* This is sufficient. Even were the Court to assume all Abramson's arguments were correct, the Court may deny a Rule 12(b)(1) motion based on the indictment's legal sufficiency alone. *See Yashar*, 166 F.3d at 880; *White*, 610 F.3d at 958.

The government need not prove its case at the charging phase; it need only adequately allege the elements of the crime. *See United States v. Rodriguez Rivera*, 918 F.3d 32, 35 (1st Cir. 2019) ("[T]he government need not recite all of its evidence in the indictment."); *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000) ("The government is entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for acquittal . . . ."). It is enough at

4

this stage that the government has alleged that Abramson filed the Forms 1120X, along with the other required elements of the offense.

The Court also finds, however, that Abramson's arguments fail on their merits.

**B.      Abramson's Defense Cannot Be Determined as a Matter of Law**

In some circumstances, a court may grant a Rule 12(b) motion when a defendant raises and establishes a defense that is clear from the face of the indictment, such as a statute-of-limitations defense. *United States v. Sampson*, 898 F.3d 270, 279 (2d Cir. 2018). "But when such a defense raises dispositive 'evidentiary questions,' a district court must defer resolving those questions until trial." *Id.* (citing *United States v. Knox*, 396 U.S. 77, 83 & 83 n.7 (1969)); *see also United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) ("If [a] pretrial claim is 'substantially founded upon and intertwined with' evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred." (internal citation omitted)).

The Federal Rules of Criminal Procedure do not provide a mechanism analogous to the motion for summary judgment in the Federal Rules of Civil Procedure. *See Sampson*, 898 F.3d at 279–81 (collecting cases and explaining that procedural rules in civil cases allow dismissal based on proffered evidence by parties but that no such analogue exists in criminal cases). "[W]hen a defense raises a factual dispute that is inextricably intertwined with a defendant's potential culpability, a judge cannot resolve that dispute on a Rule 12(b) motion." *Id.* at 281 (citing *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010)).

Here, Abramson's contention that the IRS "rejected" his amended tax returns, such that they cannot be considered filed as a matter of law, is not a defense that is clear on the face of the indictment. He relies on evidence proffered to the Court that purportedly proves that the IRS

rejected his attempt to file amended tax returns. This evidence, he says, supports his legal argument that the IRS rejected his returns, so the IRS never accepted them; ergo, they were never filed. (*See* dkt. 80 at 6–7; *see also* dkt. 81 (Exhibits filed under seal)). Ignoring, for the moment, his legal argument—that the IRS must "accept" an amended return for it to be considered filed—his defense is "inextricably tied" to the factual premise that the IRS "rejected" his returns. *See Sampson*, 898 F.3d at 281.

Abramson's defense relies on external evidence to argue that there is no dispute as to any material fact that the IRS "rejected" the Forms 1120X, much like a civil motion for summary judgment would. But even if there were a procedural mechanism for such an argument in the criminal context—which there is not—this fact is disputed. The Court cannot resolve a factual dispute in a criminal case that bears on the defendant's culpability. *See Sampson*, 898 F.3d at 281; *cf. United States v. Brissette*, 919 F.3d 670, 676 (1st Cir. 2019) (explaining that in limited circumstances, a district court may consider a Rule 12(b) motion "where the government does not dispute the ability of the court to reach the motion and proffers, stipulates, or otherwise does not dispute the pertinent facts" (internal citations omitted)); *United States v. DiFonzo*, 603 F.2d 1260, 1263 (7th Cir. 1979) ("The defendant is not permitted to transcend the four-corners of the indictment in order to demonstrate its insufficiency.").

Abramson submitted the March 16, 2015, letter that the IRS sent to him following his submission of the Forms 1120X for LES. (*See* dkt. 80 at 6–7; *see also* dkt. 82 (Exhibits filed under seal)). The letter states:

> This letter refers to your request for a Private Letter Ruling (PLR) dated August 6, 2014, on behalf of Leasing Employment Services Co., Inc.(the taxpayer) requesting an extension of time under §§ 301.9100-1 and 301.9100-3 of the Procedure and Administrative Regulations for the taxpayer and its subsidiaries to file a consolidated return.

6

> In order to fully address the issues in the PLR request, we asked for additional information via phone calls on December 15, 2014 and January 28, 2015. Under section 8.05(1) of Rev. Proc. 2015-1, 2015 I.R.B. 1, taxpayers have 21 days to submit information requested by the Service to process a PLR. We also left follow-up messages for you on February 215, 2015 and March 9, 2015 to remind you that we needed this information to process the PLR.
>
> Because the response period has now passed and the requested information has not been received, the PLR request will not be processed. Accordingly, no further action will be taken in this office, and the case is considered closed. See section 8.05(3) of Rev. Proc. 2015-1.

(Dkt. 82 at 7). Abramson also included scans of the submitted Forms 1120X, showing stamps and marks on them. He speculates that "the proposed Form 1120X for 2009 appears to have been accidentally stamped with 'accepted as filed,' by the IRS, but this stamp was then scratched out. Instead, the letter 'D,' presumably for 'Denied,' was added in its place." (Dkt. 80 at 6 (citing Exhibit C)). He adds that similar markings were made on the 2008 return. (*Id.* (citing Exhibit D)). Finally, he states the other proposed returns were stamped only as "received." (*Id.*)

Abramson's defense requires considering and weighing evidence to make factual determinations regarding these documents' meanings. It is not self-evident that the March 2015 letter "rejected" Abramson's returns; there are other possible interpretations of this letter, including that the IRS simply decided not to issue a private letter ruling based on inadequate information. It is even less clear what "D" means on the proffered forms. The government offers an alternative explanation. (Dkt. 91 at 4 n.2). The Court cannot resolve factual disputes about such evidentiary issues on a Rule 12(b) motion. *Sampson*, 898 F.3d at 281; *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010) ("[I]f the pretrial motion raises factual questions associated with the validity of the defense, the district court cannot make those determinations.").

7

C.	Amended Tax Returns Are Filed When Submitted to and Received by IRS

Finally, even assuming the factual contentions of Abramson's defense, his legal conclusion is wrong. The Court finds that an amended tax return is "filed" within the meaning of the offense here when it is physically delivered to and received by the IRS. Though the IRS retains discretion to accept or reject the information contained within an amended return as the basis for its calculation of a taxpayer's tax liability, that is distinct from the filing of the return.

Abramson contends that, "amended returns, like the 1120X forms at issue here, are not filed automatically upon mailing; the taxpayer must meet the required prerequisites for filing and the IRS must accept the return. A taxpayer does not have an automatic right to file an amended return; the ability to do so is at the discretion of the IRS." (Dkt. 80 at 5). He first cites *Goldstone v. Commissioner*, 65 T.C. 113 (1975), for this proposition. In *Goldstone*, petitioners filed an original, timely tax return claiming an investment credit on their 1967 taxes but later "mailed an amended tax return" to their region's IRS Center and then mailed a subsequent amendment to the prior amended return, both of which claimed a refund of $4,596.61 and omitted the investment credit originally claimed. *Id.* at 114. The IRS denied petitioners' refund claims in two letters and made no direct comment in either letter about petitioners' omission of the prior investment credit. *Id.* The IRS then used the original claimed investment credit in applicable calculations for petitioners' subsequent tax years. *Id.* at 115. Petitioners claimed that they had a right for their amended returns—without the investment credit—to form the basis of subsequent tax calculations, but the court disagreed. *Id.* at 116. The court held that the IRS is not statutorily required even to offer the option of filing amended tax returns, much less to accept their contents for computation and settlement of future tax liability. *Id.*

8

Although the court in *Goldstone* concluded that the IRS had rejected and not accepted the amended tax returns for purposes of calculating petitioners' subsequent tax liability, the court nevertheless referred to those returns as "filed." *See id.* at 117 ("Petitioners' treatment of the investment credit on their 1967 return was entirely correct, and the treatment accorded it on the amended returns ***filed*** *long after the period for a filing of a return for 1967 had expired*, is manifestly inconsistent with the initial treatment thereof."). Therefore, the IRS may reject an amended return's proposed tax calculations, but that return was nevertheless filed. The case does not support Abramson's argument.

Abramson's other cases fare no better. The Supreme Court has held that "the Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace." *Badaracco v. Commissioner*, 464 U.S. 386, 393 (1984). Here, taxpayers submitted fraudulent tax returns, but when the IRS subpoenaed their books and records, they "filed nonfraudulent amended returns for the tax years in question and paid the additional basic taxes thereon." *Id.* at 389. The taxpayers were nevertheless indicted for the fraudulent original returns and pleaded guilty. *Id.* The IRS later sought to collect the fraud penalty of 50% of the underpayment in the basic tax. *Id.* Petitioners argued that because they filed nonfraudulent amended returns, their original, fraudulent returns were rendered a nullity for statute-of-limitations purposes under § 6501. *Id.* at 396. They claimed their nonfraudulent, amended returns were necessarily "the return[s]" referred to in § 6501(a), which limits the IRS to collection attempts within three years of when "the return was filed" and avoids the consequences of the statute of limitation's exception in § 6501(c)(1) that allows tax assessment "at any time" for fraudulent returns. *Id.* at 396.

9

The Court rejected this argument and held that the "nullity" argument was baseless because "the return" referred to in § 6501(a) was clearly the original, not the amended, return. *Id.* at 396–97. In this context, the Court's holding that the taxpayer has neither a right to file, nor for the IRS to accept, an amended return is completely consistent with "filing" and "acceptance" as separate concepts. The Court here clearly characterized the amended-but-not-accepted returns as *filed*. *See id.* at 398 ("Even though the amended return proves to be an honest one, its *filing* does not necessarily 'remov[e] the Commissioner from the disadvantageous position in which he was originally placed.'"); *id.* ("[T]he *filing of a document styled 'amended return'* does not fundamentally change the nature of a tax fraud investigation."); *id.* at 399 ("Neither are we persuaded by [petitioner's] argument that a literal reading of the statute 'punishes' the taxpayer who repentantly *files* an amended return.").

Abramson's three other cases cited for the proposition that the IRS has discretion to accept or reject a return—*Jones v. Commissioner*, 338 F.3d 463, 466 (5th Cir. 2003) (per curiam); *Hillsboro National Bank v. Commissioner*, 460 U.S. 370, 380 n.10 (1983); *Evans Cooperage Co., Inc. v. United States*, 712 F.2d 199, 204 (5th Cir. 1983)—all tie back to another underlying appellate case, which is likewise unhelpful to him. In that case, the court held that "[n]either the Internal Revenue Code nor the Treasury Regulations make any provision for the acceptance of an amended return in place of the original return previously filed." *Koch v. Alexander*, 561 F.2d 1115, 1117 (4th Cir. 1977). But the *Koch* Court repeatedly referred to the amended—and rejected—tax return as "filed." *See id.* at 1116 ("The issue in this appeal is whether the *filing* of an amended income tax return revealing zero tax liability . . . renders the amount of tax disclosed in the taxpayer's original return, and previously assessed by IRS, a 'deficiency' . . . ."); *id.* at 1117 ("The Kochs *filed* an amended tax return. . . . The IRS has made no assessment on the basis of the

10

amended return, nor has it taken that return into account by making a supplemental assessment upon the original return."). Likewise, none of the other three subsequent cases citing *Koch* or its progeny provides any basis for Abramson's proposition that the IRS must accept the conclusions contained within an amended tax return for that return to be considered "filed" with the IRS.

Rather, the Court finds ample support that an amended tax return—just as an original, timely tax return—is considered "filed" when it is physically delivered to and received by the IRS. This is the general rule. *See Davis v. United States*, 230 F.3d 1383, 1383 (Fed. Cir. 2000) ("To be properly filed, a claim for refund must be physically delivered to and received by the IRS, unless . . . an exception to the physical delivery rule applies."); *In re Smith*, 96 F.3d 800, 801 (6th Cir. 1996) ("Generally, a tax return is 'filed' on the date that it is received by the United States." (citing *Surowka v. United States,* 909 F.2d 148, 149 (6th Cir.1990)); *Allnutt v. Comm'r*, 523 F.3d 406, 412–13 (4th Cir. 2008) ("The Code does not define the term 'file' or 'filed.' Courts have long held, however, that in order for returns to be considered 'filed' for purposes of setting the period of limitations in motion, the returns must be delivered, in the appropriate form, to the specific individual or individuals identified in the Code or Regulations."). The fact that such cases dealt with the timeliness of general tax returns rather than an untimely, amended tax return is not consequential. This is the common and ordinary understanding of when a return is considered "filed." There is little reason to alter the definition for an amended return.

Furthermore, cases concerning amended returns suggest this ordinary meaning applies. In *Dover Corp. & Subsidiaries v. Commissioner*, 148 F.3d 70 (2d Cir. 1998) (per curiam), the Court characterized as "filed" an amended return whose contents the IRS rejected for purposes of calculating the corporation's tax liability. *See id.* at 72 ("On September 15, 1994, Dover *filed* amended income tax returns for 1990 and 1991. It claimed an increased overpayment on its

amended return for 1990 and made an election to have that increased overpayment treated as an estimated tax payment for 1991."); *id.* at 73 ("Where an amended return *has been filed* for a year as to which the IRS has already issued notice of a deficiency, the agency has ample discretion to refuse to accept the amended return . . . ."). Likewise, the Ninth Circuit rejected an argument that the IRS must fully process returns for them to be considered "filed" as a necessary element of a criminal conviction. *See United States v. Hanson*, 2 F.3d 942, 946 (9th Cir. 1993), *superseded on other grounds by statute* ("Hanson's assertion that the 1040 form and the 1096 and 1099 forms were not 'filed' because they were never fully processed by the IRS is meritless. Evidence was presented that Hanson personally mailed the forms and that the IRS received them. A return is 'filed' at the time it is delivered to the IRS." (citing *Emmons v. Commissioner,* 898 F.2d 50, 51 (5th Cir.1990); *First Charter Fin. Corp. v. United States,* 669 F.2d 1342, 1345–46 (9th Cir.1982))).

"Filing" an amended return here has the same legal meaning as it does in all ordinary cases. An amended return is filed for purposes of a § 7206(1) charge when it has been delivered to and received by the IRS. The IRS's subsequent discretionary acceptance or rejection of the information contained therein for purposes of calculating tax liability does not affect the determination of whether the return was filed.

**Conclusion**

For these reasons, the Court denies Abramson's Motion to Dismiss Counts 3–9 of the indictment under Federal Rule of Criminal Procedure 12(b)(1). [80]

Date: January 20, 2023

_____
Virginia M. Kendall
United States District Judge