UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ABRAMSON | No. 18 CR 681<br><br>Hon. Virginia M. Kendall |

## EMERGENCY MOTION TO REVOKE BOND

The UNITED STATES OF AMERICA, through MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, pursuant to 18 U.S.C. § 3148(b), hereby moves to revoke the defendant's bond.

### PRELIMINARY STATEMENT

Defendant Michael Abramson is an attorney who previously practiced at a large private law firm based in Chicago, and currently practices law in his own firm. He has been a licensed attorney for more than four decades. Abramson was released prior to trial pursuant to an order that set relatively standard conditions on his release—including a condition that prohibited him from contacting any person who may be a witness in the prosecution, including Individual B, except as necessary to the operation of defendant's businesses.

During his first trial, Individual B testified that defendant discussed a substantive trial issue with her in the weeks leading up to trial. When that disclosure came to light, this Court took special care to remind defendant that such contacts were prohibited.

Individual B testified for the government at defendant's first trial and is slated to testify again. Individual B is represented by an attorney. Despite the release order, and despite the fact that Individual B is a represented party, on January 23, 2024, defendant Abramson provided Individual B with a transcript of Individual B's testimony in this case—but the transcript was annotated with notes about how Individual B should testify at the upcoming trial. The notes contradicted Individual B's prior trial testimony and provided a script on how to answer questions in a way that conformed with defendant's theory of the case.

Because there is clear and convincing evidence that defendant Abramson violated the terms of the order setting conditions of release and there is reasonable cause to believe that defendant is actively seeking to obstruct justice, the government asks the Court to revoke defendant's bond.

**I.     Background**

<u>Charges and Factual Background</u>

On October 11, 2018, a grand jury returned a thirteen-count indictment charging defendant with making false statements in personal and corporate income tax returns, in violation of Title 26, United States Code, Section 7206(1). Dkt. 1. These false statements relate to payments defendant made to his mistress, Jerilyn Totani, through one of his companies, Eastern Advisors. The false statements enabled defendant to take unwarranted corporate tax deductions and disguise gift payments to Totani as loans to avoid additional taxable income on his tax returns.

As is relevant to the present motion, defendant, an attorney, caused his bookkeeper, Individual B, to make regular payments of $2,500 to Totani on the 15th and 30th of each month, booking those payments as "advance on commissions." These payments, in part, came from money derived from an agreement between Eastern Advisors and Outfront Media ("Outfront") related to a negotiated agreement for certain billboards in Rosemont, Illinois. Defendant also directed Individual B to pay Totani's expenses, including credit card bills and medical bills, and to cause those payments to be included in a loan account (the "JT Loan Account").

Between 2006 and 2014, defendant personally made (and caused Individual B to make) hundreds of thousands of dollars in purported commissions payments to Totani and hundreds of thousands of dollars in payments either to, or on behalf of, Totani and to record the payments as loans from defendant to Totani through the JT Loan Account. While characterized as "loans" from Eastern Advisors, these payments were taxable distributions. There was no evidence supporting the characterization of these payments as loans.

Between its inception in 2002 and 2013, Eastern Advisors, the entity through which defendant provided hundreds of thousands of dollars to Totani, was required to, and did not file, an annual United States Corporation Income Tax Return, Form 1120. In or around the fall of 2013, the IRS began requesting records relating to Eastern Advisors and made a formal request to another business associate of defendant through the Mexican tax authorities, which request mentioned both Eastern Advisors and defendant. Around that same time—and for the first time—

3

defendant asked Individual B to prepare Forms 1099 from Eastern Advisors to third parties (including to Totani), and to file amended returns for his companies to include Eastern Advisors (which, as discussed above, had not filed a tax return between 2002 and 2013). Similarly, around that same time, and for the first time, defendant asked Individual B to go back through the payments from Outfront, determine what the payments to Totani should have been since 2003, and reclassify certain payments that had already been made as part of the JT Loan Account (thus, increasing the loan amount).

## Order Setting Conditions of Release

After his arraignment in this case, defendant was released on a $100,000 unsecured bond with a number of conditions, including a condition that defendant "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including: Individuals A (Totani) and B as identified in the indictment except as necessary to the operation of defendant's businesses." Dkt. 13 (attached as Exhibit A).[1] Those conditions were reviewed with defendant, a licensed attorney with over four decades of experience, at the time of his release on bond.

Between January 31, 2023, and February 10, 2023, a jury trial was held. Dkt. 146-154. The jury was unable to reach a verdict and the Court declared a mistrial. Dkt. 154. During the trial, Individual B testified that, prior to Individual B's trial testimony, defendant had informed Individual B that Individual B was listed as a

---

[1] The Court modified the order setting conditions of release to enable additional contact with Individual A (Totani) outside of business purposes. Dkt. 30.

4

corporate secretary for Leasing Employment Services. Tr. 397. When asked how Individual B developed awareness that Individual B was listed as a secretary on the corporate records, Individual B said, "actually, we just talked about it," and said that the conversation occurred approximately two weeks before trial. *Id.* at 397-98.

During a break in the proceedings, outside the presence of the jury, the government raised the fact that defendant had improperly communicated with Individual B about substantive issues impacting her trial testimony. Tr. 792. The government requested that the Court admonish defendant regarding contact with witnesses, observing that this was a violation of his order setting conditions of release and could potentially arise to witness tampering or obstruction of justice. *Id.* Defense counsel responded that defendant worked with Individual B. *Id.* at 793. The Court acknowledged that there were a couple of instances where witnesses testified about having discussed issues with defendant before they testified. *Id.* The Court observed that the government could raise such testimony in closing argument, and said: "if you are not allowed to talk to witnesses during your pretrial release about the case, then you really should not be doing so." *Id.*

Defendant Attempts to Influence Individual B's
<u>Trial Testimony in Advance of Retrial</u>

On January 25, 2024, the government and FDIC Special Agent Jason Gibson met with Individual B and Individual B's attorney for a preparation session in advance of defendant's retrial, which is scheduled for February 5, 2024. During the session, Individual B informed the government that, on January 23, 2024, defendant approached Individual B in the office with a transcript of Individual B's prior

5

testimony with handwritten notations on the side. Individual B did not review the handwritten notations. On January 25, 2024, Special Agent Gibson took possession of the transcript with the handwritten notations.[2]

Upon review of the trial transcript defendant gave to Individual B, the government observed that the document was 91-pages because defendant had printed out records for Individual B to review and inserted them into the binder.[3] Among other things, the transcript reflects:

(1) Defendant providing Individual B with information that she did not have, which contradicted her original trial testimony (*see, e.g.*, Ex. B at 39, 79);

(2) Defendant writing scripted answers where defendant referred to himself in the third person and Individual B in the first person, indicating that such answers were to be given verbatim as written (*see, e.g.*, Ex. B at 15, 39, 52, 79-81);

(3) Defendant crossed out a "No" answer Individual B previously provided, and replaced it with a "Yes" answer along with a narrative (*see, e.g.*, Ex. B at 16); and

(4) Defendant inserted his theory of the defense regarding the loans and commissions and even inserted questions and answers in some instances, plainly providing information to Individual B in the hopes that she would testify in accordance with defendant's theory of the case (*see, e.g.*, Ex. B at 36, 53, 56, 79, 80).

---

[2] The transcript with the handwritten notations is filed under seal as Exhibit B.

[3] These records included a one-page document describing the different between "reclassification and recharacterization of funds" and records from the Illinois Department of Financial and Professional Regulation relating to an individual who came up during Individual B's testimony.

**II.      Applicable Law**

Under 18 U.S.C. § 3148(b), if there are allegations that a defendant violated conditions of pretrial release, the Court, after a hearing, must determine whether there was (a) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (b) there is clear and convincing evidence that the person has violated any other condition of release.  If the Court makes such a finding, the defendant's pretrial release order should be revoked if the Court finds either that (a) there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person in the community or (b) the person is unlikely to abide by any condition or combination of conditions of release.

If the Court finds there is probable cause to believe that, while on release, the defendant committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or to the community. 18 U.S.C. § 3148(b)(2)(B).

**III.      Argument**

As set forth above, there is probable cause to believe that defendant has committed a federal crime while on release.  Title 18, United States Code, Section 1512(c) prohibits any person from corruptly attempting to obstruct, influence, or impeding any official proceeding.  Here, less than two weeks before defendant's retrial, despite an order of the Court prohibiting contact with Individual B (not to

7

mention the ethical rules applicable to attorneys concerning contact with represented parties) Abramson approached a critical witness (and a subordinate whom he employs) with a copy of the witness's trial testimony with notes instructing her as to how she should testify in contradiction to the witness's prior testimony. The notes reflect that defendant was attempting to educate Individual B regarding aspects of the case consistent with defendant's theory of the defense, and to provide scripted answers to questions that the government and defense counsel asked at the first trial.

For the same reason, there is clear and convincing evidence that defendant has violated Condition 7(g) of the order setting conditions of release, which prohibited contact with any person who may be a witness in the prosecution "except as necessary to the operation of defendant's businesses." Individual B was listed in the order setting conditions of release to make clear that defendant was not to contact her except for the operation of his business. Defendant also plainly knew that Individual B had testified at the first trial. The trial transcript in no way related to "the operations of defendant's businesses"—it reflected her sworn testimony that defendant was attempting to alter at the impending trial.

Notably, this is not the first violation of a court order in this case. As the government previously detailed, Totani was intercepted on jail calls discussing an FBI report of interview regarding a potential government witness, including the substance and length of the report. Dkt. 78 at 8-9 & n.5. Because the report was produced only to (prior) defense counsel and ended up in Totani's possession,

8

defendant necessarily violated the Court's protective order, which was entered on October 29, 2018. Dkt. 26.

Defendant's continuing pattern of non-compliance with court orders, demonstrated contempt for the integrity of the official proceeding, and most recent efforts to obstruct justice reflect that he is unlikely to abide by any condition or combination of conditions of release.

### IV. Conclusion

The government respectfully requests that an emergency hearing be set for January 26, 2024, and that defendant's bond be revoked and that he be remanded into custody pending trial.

                                          Respectfully submitted,

                                          MORRIS PASQUAL
                                          Acting United States Attorney

By:   *s/ Richard Rothblatt*
        RICHARD ROTHBLATT
        MISTY N. WRIGHT
        Assistant United States Attorneys
        United States Attorney's Office
        219 South Dearborn Street
        Chicago, Illinois 60604
        (312) 353-5300

Dated: January 25, 2024