**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No.: 18 CR 681 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| MICHAEL ABRAMSON, ) | |
| ) | |

## MICHAEL ABRAMSON'S MOTION TO DISQUALIFY

Defendant, Michael Abramson, by and through his attorneys, Nishay K. Sanan and Cece White, respectfully request that this honorable Court be disqualified from hearing this matter pursuant to 28 U.S.C. § 455. In support thereof, Mr. Abramson states as follows:

### I. Background

Michael Abramson was initially charged by indictment with 13 counts of filing false tax returns in violation of 26 U.S.C. 7206(1). (ECF No. 1). Counts 1, 2, 11, and 13 charge Mr. Abramson with making false statements on his personal tax returns for tax years 2011-2014. Counts 3-9 charge Mr. Abramson with making false statements on amended consolidated corporate tax returns for Leasing Employment Services, a business in which Mr. Abramson has an ownership interest, for tax years 2006-2012. Counts 10 and 12 charge Mr. Abramson with making false statements on the same business's corporate tax returns for tax years 2013-2014.

The matter proceeded to trial in late January 2023. The government failed to carry its burden and the jury became deadlocked, resulting in this Court declaring a mistrial on February 10, 2023. Dkt. 154. For various reasons the retrial was set and continued to February 5, 2024. Dkt. 171. Less than two weeks before the retrial was to begin, the government filed its Emergency Motion to Revoke Bond (Dkt. 175) which this Court granted following a hearing on January 29, 2024. Dkt. 178. Mr. Abramson asked this Court to reconsider its finding on the issue of bond shortly thereafter. (Dkt. 191).

On March 18, 2024, the government filed a superseding indictment, which includes the original allegations and two additional counts:

- Count Fourteen, alleging that Mr. Abramson engaged in witness tampering while under conditions of pretrial release by providing to Individual B a printed transcript of her prior testimony with handwritten notes (the "Scripted Transcript"), in violation of 18 U.S.C. §§ 1512(b)(1) and 3147; and

- Count Fifteen, alleging that Mr. Abramson committed contempt of court by way of the above acts, in violation of 18 U.S.C. § 401(3).

Dkt. 184. During the arraignment the Court took under advisement Mr. Abramson's motion to reconsider the revocation of his bond. On April 11, 2024, this Court denied Mr. Abramson's motion for reconsideration of bond. Dkt. 196. During the course of the first trial, during the hearing on the government's motion to revoke bond, and in the minute, entry denying the motion to reconsider, this Court demonstrated that disqualification is appropriate under 18 U.S.C. § 455(a) and (b)(1).

## II. ARGUMENT

This Court must grant the instant motion to disqualify pursuant to 18 U.S.C. § 455, which provides in pertinent part:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> > (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

*Id.* Here, this Court must be disqualified for three reasons: 1) under subsection (a) due to the appearance of partiality by this Court; 2) under subsection (b)(1) due to this Court's demonstrated personal bias or prejudice towards Mr. Abramson; and 3) under subsection (b)(1) because this Court

has personal knowledge and will likely be a witness related to Counts Fourteen and Fifteen of the superseding indictment.

After the government moved to revoke Mr. Abramson's bond in late January 2024, this Court held a hearing on the matter on January 29, 2024. Although Mr. Abramson is not pleased with the result of the hearing, his motion to disqualify is based in part on the Court's commentary during that hearing, not the end result. After hearing arguments from the parties on the issue of revocation of bond, this Court offered its explanation for revoking Mr. Abramson's pretrial release, as follows:

> THE COURT: Okay. It's appalling activity. I have not seen anything quite like it before. I had before had [sic] the issues regarding the interaction from the jail call, and I gave a warning and an admonishment. And then to have the interaction with Ms. Totani there, and then to find out, it was I think two weeks before trial, with this very same witness, where I made very clear that you couldn't be talking with her about the trial. And it was an odd situation because she works with you. But then to see that this – transcript is appalling. It's not just telling her how to testify. It's also giving her all the information and scripting. There's extra information in here to reclassify and recharacterize, you know, so that she knows the terms more appropriately. And yes, there's more than one place where it's crossed out, the answer that she's given. So witness tampering, absolutely trying to attempt to influence a witness's testimony before the Court. It's unbelievable. I have never seen anything quite so – just – I don't even know how to describe it. It's chutzpah, right? Just in the face of this Court to say "I can get away with doing something like this," after all of the warnings.
> This is a violation of criminal law as well as a violation of my Court's orders, so I'm revoking your bond and ordering that you be detained.

Revocation Hearing (Rev. Hr.), Dkt. 179, p. 8. As explained below, the above excerpt and additional facts demonstrate why this Court must be disqualified not only to avoid the appearance of impropriety, but due to the fact that this Court is a witness for the conduct alleged in Counts Fourteen and Fifteen, and because this Court's commentary demonstrates bias and prejudice towards Mr. Abramson.

      **a. Based on the Actions of This Court, Any Reasonable Observer Would Doubt the Court's Ability to Be Impartial in This Case**

Section 455(a) requires that a judge disqualify themselves if a party shows "that a judge's impartiality *might* be questioned by a reasonable, well-informed observer." *United States v. Herrera-Valdez*, 826 F.3d 912, 917 (7th Cir. 2016) (emphasis in original), *citing United States v. Hatcher*, 150 F.3d 631, 637 (7th Cir. 1998). The purpose of section 455(a) is to "promote public confidence in the integrity of the judicial process … [which] does not depend upon whether or not the judge actually knew of facts creating an appearance of impropriety, so long as the public might reasonably believe that he or she knew." *Herrera-Valdez*, 826 F.3d at 917, *quoting Durhan v. Neopolitan*, 875 F.2d 91, 97 (7th Cir. 1989); *In re Nettles*, 394 F.3d 1001, 1003 (7th Cir. 2005) ("We do not suggest that Judge Bucklo would in fact be prejudiced against Nettles. The issue is appearances,").

To evaluate the issue of disqualification under § 455(a), the court must consider whether "an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case." *Herrera-Valdez*, 826 F.3d at 917, *citing Pepsico, Inc. v. McMillen*, 764 F.2d 458, 460 (7th Cir. 1985). This test is difficult to apply because the court must evaluate the issues as both the object and interpreter of the inquiry. *SCA Servs. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977) (finding an "appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system,"). Importantly, there is no requirement to draw "all inferences favorable to the honesty and care of the judge whose conduct has been questioned," because such a requirement "could collapse the appearance of impropriety standard under § 455(a) into a demand for actual proof of impropriety." *Herrera-Valdez*, 826 F.3d at 918, *quoting In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990). Here, a reasonable, objective party reviewing the comments of this Court could reasonably find that there exists an appearance of impropriety, because this Court substantially exceeded the appropriate inquiry for a motion to

revoke bond, suggested charges to the government before the filing of the superseding indictment, and then pre-determined Mr. Abramson's guilt.

To be clear, this Court did not determine "guilt" on the issue of whether the government met the revocation standard; this Court held in no uncertain terms that Mr. Abramson was guilty of the criminal offense and of violating the Court's orders. Rev. Hr., p. 8 ("his is a violation of criminal law as well as a violation of my Court's orders"). Prior to that finding, this Court twice asked the government if it would seek a superseding indictment with the specific additional charge of "1512," referring to a violation of 18 U.S.C. § 1512. Rev. Hr., pp. 6, 7. Not surprisingly, the government superseded the indictment with two additional charges: a violation of criminal law in the form of 18 U.S.C. § 1512, and a violation of this Court's order. There are specific findings which must be made during a hearing on a motion to revoke pretrial release under 18 U.S.C. 3148 - a finding of guilt is not one of them.

Judges are not required to be perfect in their restraint and are allowed to express sentiment, sometimes even anger, without it rising to the level of disqualification under § 455. *See U.S. v. Betts-Gaston*, 860 F.3d 525, 534 (7th Cir. 2017), *citing United States v. Weiss*, 491 F.2d 460, 468 (2d Cir. 1974) ("Judges, while expected to possess more than the average amount of self-restraint, are still only human."). And while judges are allowed latitude to express some emotion, the issue here is this Court's pre-determination of guilt on substantive issues as expressed in the record. Here, this Court did not respond to baiting like in *Betts-Gaston*, nor were there momentary lapses in composure or comments in response to courtroom outbursts like in *Betts-Gaston*. Instead, this Court offered its contemptuous comments after reviewing the government's motion over the weekend and having ample time to compose its thoughts. Despite that, this Court suggested charges to the government and gave a pre-determination of guilt related to those charges. Rev. Hr., p. 8 (This is a violation of criminal law as well as a violation of my Court's orders …"). Although Mr. Abramson did not

5

receive the benefit of a hearing on the merits of the alleged violations of pretrial release, this Court doubled-down on its pre-determination of guilt in the minute entry order denying Mr. Abramson's motion to reconsider the issue of bond:

> MINUTE entry before the Honorable Virginia M. Kendall as to Michael Abramson. Defendant Abramson has moved this Court for reconsideration of release pending Trial 191. The Court detained him after a witness informed the Government that he had provided her with a copy of her testimony from the first Trial in this case which resulted in a mistrial. The transcript was marked up to change the witness's testimony on critical areas helpful to gathering the defense and also included supplemental material to support that theory. The Court had already admonished Defendant regarding this same witness during his first trial. Defendant's actions were egregious in that the witness is also an employee of his and therefore he has authority over her. These actions were extreme and were a direct assault on the integrity of the judicial process. The Court is not convinced that the integrity of the upcoming trial can be secured if Defendant is released. Therefore, the motion 191 is denied. Motion for reconsideration 191 is denied as to Michael Abramson (1); as to Michael Abramson Mailed notice (lk, ) (Entered: 04/11/2024)

Dkt. 196. A reasonable, objective party viewing the facts of this case, this Court's finding of guilt at the hearing on revocation, and this Court's renewed findings on reconsideration – none of which address the statutory considerations for revocation of pretrial release – created the appearance of partiality. This Court's suggestion of charges to the government at the revocation hearing, and this Court's predetermination of guilt on those charges create the appearance of partiality. The language of § 455(a) is mandatory, not permissive, and this Court must disqualify itself.

> b. **This Court Should Disqualify Itself Because the Court has a Personal Bias Towards Mr. Abramson, Demonstrated Through the Court's Language and Animosity Towards Him**

This Court has demonstrated a personal bias against Mr. Abramson illustrated by its predetermination of his guilt for an alleged violation of criminal law (on charges it suggested) and violations of a court order (without any finding pursuant to the statute) but went a step further by using a Yiddish term to describe Mr. Abramson's behavior. This is a confounding choice of language for a defendant who is Jewish and a Court which is believed not to be. As described above, this Court provided its thoughts to Mr. Abramson on the issue of his alleged actions: "I have never

6

seen anything quite so – just – I don't even know how to describe it. It's chutzpah, right? Just in the face of this Court to say "I can get away with doing something like this," after all of the warnings." Rev. Hr., p. 8; *see* Masa Israel Journey, "Chutzpah" available at

https://www.masaisrael.org/chutzpah/ (last accessed April 22, 2024) ("Chutzpah" is a Yiddish term that has found its way into the English and Hebrew language to describe a remarkable quality that combines audacity, confidence, and a touch of impudence"). Merriam-Webster provides a less nuanced definition: "chutzpah" is "shameless boldness." Available at https://www.merriam-webster.com/thesaurus/chutzpah (last accessed April 22, 2024).

While "[a] judge's ordinary efforts at courtroom administration – even a *stern and short-tempered* judge's ordinary efforts at courtroom administration – remains immune' from charges of bias or prejudice," what occurred in this case was something different. *United States v. Barr*, 960 F.3d 906, 920 (7th Cir. 2020) (emphasis in original), *quoting Liteky v. United States*, 510 U.S. 540, 555 (1994). Why this Court would choose to use a Yiddish word to describe the "shameless" behavior of a Jewish man is inexplicable, but certainly has nothing to do with courtroom administration – even stern and short-tempered administration. This Court has demonstrated a bias or prejudice against Mr. Abramson based on its use of a Yiddish word to describe negative behavior by a Jewish man, all while pre-determining his guilt and suggesting charges to the government. The bias and prejudice are clear and on the record. This Court must disqualify itself.

      c. **This Court Should Disqualify Itself Because the Court Has Become a Witness to the Allegations in Counts Fourteen and Fifteen of the Superseding Indictment**

This Court must also disqualify itself based on the second prong of § 455(b)(1): that this Court has "personal knowledge of disputed evidentiary facts concerning the proceeding …" The government has charged Mr. Abramson with violating a criminal statute (18 U.S.C. § 1512) in violation of his pretrial release in Count Fourteen, and criminal contempt by violation of a court

7

order in Count Fifteen. Both of these counts relate to the magistrate judge's initial conditions of pretrial release, which were then adopted by this Court. Prior to filing the superseding indictment with its additional charges, the government placed this Court firmly in the category of a witness, demonstrated by the government's argument at the revocation hearing in January:

> And during the first trial, this Court took special care to admonish defendant regarding contacts with potential witnesses in light of trial testimony that came out where this Individual B, Jill Roth, the bookkeeper for his companies, testified that she had had a conversation within the last couple of weeks of the last trial regarding new information she didn't have about her being a shareholder of Leasing Employment Services, so the Court had to admonish defendant about this during the course of his last trial.

Rev. Hr., p. 3. The government used the fact of this Court's admonishment and the basis for the admonishment as evidence that Mr. Abramson violated an order of this Court and to demonstrate knowledge on the part of Mr. Abramson. Undoubtedly the government will use the same evidence at trial to carry its burden for Counts Fourteen and Fifteen.[1] How could they not? This Court has already made a finding that Mr. Abramson's (at the time uncharged) conduct "is a violation of criminal law as well as a violation of my Court's orders …." Rev. Hr., p. 8. This Court's testimony will be material to both Counts Fourteen and Fifteen, and as such, disqualification is required.

---

[1] Even if the government chooses not to call this Court to testify, Mr. Abramson may choose to call this Court as a witness and has a Sixth Amendment right to do so. Distinct from the issue of confrontation of witnesses but related to the bases to disqualify, courts have long held that "the right to a fair trial before an impartial tribunal is a fundamental ingredient of due process." *United States v. Holder*, 399 F.Supp. 220, 225 (D.S.D. 1975); *In re Murchison*, 349 U.S. 133 (1955).

### III. CONCLUSION

Wherefore the Defendant, Mr. Michael Abramson respectfully requests that this honorable Court grant the instant request for disqualification, pursuant to 18 U.S.C. § 455.

Respectfully submitted this 22nd day of April, 2024.

*/s/ Nishay K. Sanan*
nsanan@aol.com

*/s/ Cece White*
cece@sananlaw.com

Nishay K. Sanan, Esq.
53 W. Jackson Blvd., Suite 1424
Chicago, Illinois 60604
Tel: 312-692-0360
Fax: 312-957-0111